*Decision will be entered under Rule 50.*

Dillis C. Knapp and Fay Fitch Knapp, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 88704.   Promulgated January 9, 1940.

*Stuart D. Barker, Esq.*, for the petitioners.
*B. H. Neblett, Esq.*, for the respondent.

OPINION.

MURDOCK: There was a statutory provision during all of the years material hereto, which was specifically applicable to the reporting of income from employees' trusts like the one in which this petitioner was a participant. That provision was to the effect that the trust itself was not taxable as a trust, "but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him." See section 165 of the Revenue Acts of 1934, 1932, and 1928, and section 219 (f) of the Revenue Acts of 1926, 1924, and 1921. There were some slight changes in the wording of this provision as it was continued through those acts, cf. *Oscar A. Olstad*, 32 B. T. A. 670, but the changes do not appear to be vital in so far as this proceeding is concerned. This conclusion on our part is confirmed by the fact that the petitioner makes no contention that the changes are important. In fact, he never refers to the statutory provisions in his discussion of the case. He makes no claim and the facts do not show that there was ever a time when the petitioner was entitled to withdraw from the fund, as a partial withdrawal, an amount in excess of the amount which he had paid in. Thus it does not appear that he was ever entitled to withdraw any amount from the fund which would be taxable income to him under the provisions of the revenue acts above referred to unless his right to withdraw his entire interest in the fund made it so.

It is upon the latter right that the petitioner makes his argument. He contends that the full amount credited to his account in each prior year was constructively received by him prior to 1934 because, beginning in 1922, when he completed ten years of service, it was unqualifiedly subject to his demand and could have been withdrawn by him to the very last penny without any obligation upon his part to return any of it, to pay any interest on it, or to do anything else in connection with it. There is no doubt that he had the right to withdraw his full credits. Assuming, for the purpose of this discussion,

that he can invoke the doctrine of constructive receipt for his own benefit, nevertheless the facts fail to show that any portion of the amount now being taxed to him in 1934 was constructively received by him in any prior year. The reason for this is that his right to withdraw his entire participation was given to him upon a condition. The condition was that if he withdrew from the fund he would cease to be a participant and could never become a participant again. The record clearly demonstrates that his right to continue to participate was a valuable one, the loss of which would have been a serious loss. It was unlike the ordinary investment. The company was annually making and was required to make substantial contributions to the credit of each participant based upon the amount of his deposits. Only by surrendering his right to further share in such contributions could the petitioner withdraw all of his participation from the fund. He had to surrender his entire right in what was obviously to him a very profitable and desirable opportunity as long as he could possibly remain a participant in it. It is difficult to conceive of a more important limitation or condition upon a right to receive money than the one which attached to the right of this petitioner.

The petitioner's situation in prior years was somewhat like that of the owner of building and loan shares or of a life insurance policy where the cash surrender value thereof was in excess of the amount paid in by the holder. Yet, it has never been suggested that the excess of that cash surrender value would be income taxable under the doctrine of constructive receipt in the absence of actual surrender. There, as here, the money could be obtained only by surrendering the entire investment and the anticipated valuable future benefits which could be obtained only by continued participation.

Congress, in enacting section 219 (f) and section 165, above cited, relieved the participants in employees' trusts of income tax until they had actually received their profits in cash or its equivalent. Prior to that time they might not have had any funds with which to pay the tax. Although the tax upon the entire profit at final distribution may be in excess of what the tax would have been if imposed upon the annual accretions, this circumstance is unimportant in view of the clear language of the statute. The petitioner here makes no contention that this was a stock subscription plan or that his receipt of stock instead of cash is any reason for relieving him of tax. Cf. *Schaefer* v. *Bowers*, 50 Fed. (2d) 689. The petitioner used the cash receipts method of reporting his income. None of the funds now being taxed to him were "made available" to him within the meaning of the statute at any time prior to 1934, when the actual distribution to him was made. We find no error in the determination of the Commissioner.

It becomes unnecessary, in view of what has been said above, to decide whether this taxpayer has any right to invoke the doctrine of constructive receipt. He is on the cash basis and he did not report the income in any prior year. The doctrine of constructive receipt is usually stated as follows: A taxpayer, reporting his income on the basis of cash receipts, may not deny the receipt of income and escape tax on it where it is unqualifiedly subject to his demand. It is in the nature of an estoppel and certainly one may not estop himself to his own advantage. Cf. *Asher* v. *Welch*, (U. S. Dist. Ct., Dist. Calif., S. Div., May 24, 1938). We held in the case of *Alice H. Moran, Executrix*, 26 B. T. A. 1154, that a taxpayer on the cash basis who has consistently followed the practice over a long period of years of not returning certain income because he did not receive it, may not invoke the doctrine of constructive receipt to escape tax on the income in the year in which it is actually received. The case was affirmed, 67 Fed. (2d) 601. We said in *Southern Pacific Co.*, 21 B. T. A. 990, that the omission of the income in prior years was a substantial matter which deprived the Government of the revenue which it might otherwise have collected, and the taxpayer could not avoid the natural results of the omission and seek justification for the avoidance under a doctrine at variance with the facts. It likewise becomes unnecessary to consider the probative value and effect of the statement attached to the petitioner's return in which he attempted to show that he would not have had to pay any tax in prior years even if he had reported the income in those years.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

KERN, dissenting: I respectfully note my dissent herein because I am unable to view the question presented by this proceeding as one to be disposed of by the application of the doctrines of constructive receipt. In my opinion it is solely a question of the construction to be given to the language used by Congress in enacting section 165 of the Revenue Act of 1934, set out in the margin.[1] The question presented is whether, under the facts set out in the findings, the earnings and the principal of the Sears, Roebuck & Co.'s Employees' Savings

[1] SEC. 165. EMPLOYEES' TRUSTS.

A trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under section 161, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him. Such distributees shall for the purpose of the normal tax be allowed as credits against net income such part of the amount so distributed or made available as represents the items of dividends and interest specified in section 25 (a).

and Profit-Sharing Pension Fund, in which petitioner was a depositor, or any part thereof, were "made available" to petitioner as a distributee in a year or years prior to the taxable year as petitioner contends, or were "made available" to him in the taxable year when they were physically received by him as respondent contends.

In order to find the solution to this question it is first necessary to ascertain the meaning of the words "made available" as used in the phrase "but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available * * *."

The legislative history of this section of the revenue act throws very little light on this specific question. This section made its first appearance as a part of the taxing statutes in the Revenue Act of 1921 and contained at that time the phrase which we have quoted above. There have been changes in this section which have been made in the Acts of 1926, 1928, 1932, 1934, 1936, and 1938, but the quoted phrase is used without change or comment in all of the acts with the exception of the Act of 1928, and in that act the change was minor and immaterial. However, the changes which were made in this section in the various Revenue Acts from 1924 to 1938, inclusive, indicated the desire of Congress to encourage and foster employees' trusts and to minimize the incidence of any tax on the participating employees. See Seidman's Legislative History of Federal Income Tax Laws, pp. 87, 257, 545, 604, 851.

There is no other section of the revenue acts in which the phrase "made available to" is used. In article 332 of Regulations 74 and 77, and article 44–2 of Regulations 86, the phrase is used in discussing income not reduced to possession in the following sentence: "To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, *and must be made available to him so that it may be drawn at any time*, and its receipt brought within his own control and disposition."

Nor are there any cases in which the meaning of this phrase as used in this section of the revenue act has been judicially interpreted.

We should therefore look to the ordinary meaning of the words used, *Reinecke* v. *Smith*, 289 U. S. 172, getting what help we can from the context of the section in which they appear. Webster defines "available" as: "Such as one may avail one's self of; capable of being used to accomplish a purpose; usable; convertible into a resource; as, an available measure; an available candidate." It would seem that the phrase "made available to", as used in the regulations which we have set out above, has the same connotation, since it is followed by the explanatory phrase "so that it may be drawn at any time." Look-

ing to the context of the particular section of the act, we find the phrase "made available" used disjunctively with the phrase "actually distributed." As the court said in *Monroe Cider Vinegar & Fruit Co.* v. *Riordan*, 280 Fed., 624, 626, "the legislative body is not presumed to use meanlingless language, or putting the rule another way, * * * in ascertaining the legislative intent due consideration and weight shall be given to the words and phrases of a statute." In *Gilbert* v. *Commissioner*, 56 Fed. (2d) 361, 362, the court said: "It is a well-settled rule of construction that a statute should, if possible, be so construed as to give meaning to all parts of it." We may, therefore, conclude that Congress, in using the phrase "made available" meant to provide for a situation different from that covered by the phrase "actually distributed", and that the former is antonymous to rather than synonymous with the latter. In other words, the statute provides that even though the earnings and principal of the fund accumulated by the trust have not been actually distributed to the employees, nevertheless, the amount shall be taxable to him if it is made available to him and in the year in which so made available. We must conclude that Congress used the phrase "made available" in its ordinary sense of "made usable or convertible into a resource", as distinguished from the connotation of actual receipt present in the other phrase used in this section of the statute, "actually distributed."

Since we are here concerned with a definite and express statutory provision, it is not necessary to concern ourselves, as the majority opinion has done, with any fictional doctrine of constructive receipt. The problem as I have seen it is purely one of statutory construction.

Having construed the phrase in question in this way, the remaining question is whether the phrase so construed is applicable to the facts in this case. In my opinion it is.

After petitioner had completed ten years of service with the company he was entitled to withdraw all money and securities credited to his account. The only limitation on that general right was the provision that if he once withdrew he could not reenter the fund. If this proceeding is treated as one involving the application of the doctrine of constructive receipt, it is conceivable that this limitation might be material, but it is not material in considering the question of whether the money and securities credited to petitioner by the trustees of the fund were made usable or convertible into a resource as to petitioner in a year or years prior to the taxable year. Since petitioner had the absolute right of withdrawing the money and securities so credited to him at any time after he had completed ten years of service, they then became available to him within the meaning of this section of the statute and the money and securities credited to his account in subsequent years were made available to him in the years so credited.

The case of *Asher* v. *Welsh*, decided by the Federal District Court for the District of California, Southern Division, on May 24, 1938, is not helpful in a consideration of the instant proceeding. In that case the doctrine of estoppel was found to be controlling. There the taxpayer was employed by the same company as that which employed petitioner here. He did not report in his returns as income the money and securities credited to his account by the fund in the years so credited. The respondent relied upon these returns and did not, therefore, collect the taxes which would have been collected had the facts been disclosed. Having paid a tax upon the final distribution of these accumulated moneys and securities in the year in which they were actually received, the taxpayer sought to recover the amount paid in an action against respondent. The court held that he was estopped from doing this. In the instant proceeding no issue of estoppel has been raised by respondent and there is no evidence that any tax would have been due from petitioner in any prior year even if the amounts made available to him by the fund had been reported in the year in which they were so made available. Therefore, the respondent can not be said to have relied to his detriment on petitioner's returns for prior years, and consequently, there can be no estoppel. The only information we have as to the taxes which might have been due from petitioner if his income had been properly reported is in a memorandum attached to his return for the taxable year which indicates that no taxes would have been properly payable by him.

LEECH and HILL agree with this dissent.