*Decision will be entered under Rule 155.*

LAWRENCE J. COHEN AND MARILYN P. COHEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5053-72.    Filed November 26, 1974.

*James J. McGannon* and *Patrick J. Regan,* for the petitioners.
*Earl Goldhammer,* for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1969 and 1970 in the amounts of $436.03 and $448.62, respectively.

Some of the issues have been disposed of by agreement of the parties, leaving for decision whether petitioners are entitled to exclude from their gross income for the calendar years 1969 and 1970 amounts which were withheld from the payroll checks of petitioner Lawrence J. Cohen, an employee in the civil service of the United States, pursuant to the provisions of the Civil Service Retirement Act.

All of the facts have been stipulated and are found accordingly.

At the time of the filing of their petition in this case, Lawrence J. and Marilyn P. Cohen, husband and wife, were residents of San Diego, Calif. They filed joint Federal income tax returns for the calendar years 1969 and 1970, reporting their income on the cash basis.

During the calendar years 1969 and 1970 petitioner Lawrence J. Cohen (hereinafter petitioner) was employed by the Federal Government in a classified civil service position subject to the Civil Service Retirement Act, 5 U.S.C. sec. 8331 et seq. (1964 ed.) (hereinafter the Act). This Act covers all appointive and elective officers and employees in or under the executive, judicial, and legislative branches of the United States Government, and in the municipal government of the District of Columbia, except those excluded by law or by regulation. All eligible employees are required to be covered by the Act, except Members of Congress and certain employees in the legislative branch who have the option of being covered by the Act by giving written notice to the official by whom they are paid of their desire to be covered. Sec. 8331(1) of the Act.

In the past 10 years over 90 percent of the Members of Congress have exercised the option to be covered by the Act.

Under section 8334(a)[1] of the Act as it was in force during 1970, 7 percent of the basic pay[2] of an employee covered by the Act was required to be withheld from his payroll check and deposited with the Treasury of the United States to the credit of the "Civil Service Retirement and Disability Fund" (hereinafter fund). In 1969 the withholding was at the rate of 6½ percent. In each of these years an amount equal to the amount withheld

[1] 5 U.S.C. sec. 8334. Deductions, contributions, and deposits.

(a)(1) The employing agency shall deduct and withhold 7 percent of the basic pay of an employee, 7½ percent of the basic pay of a Congressional employee, and 8 percent of the basic pay of a Member. An equal amount shall be contributed from the appropriation or fund used to pay the employee or, in the case of an elected official, from an appropriation or fund available for payment of other salaries of the same office or establishment. * * *

(2) The amounts so deducted and withheld, together with the amounts so contributed, shall be deposited in the Treasury of the United States to the credit of the Fund under such procedures as the Comptroller General of the United States may prescribe. Deposits made by an employee or Member also shall be credited to the Fund.

[2] 5 U.S.C. sec. 8331(3) "basic pay" * * *
* * *

(C) * * * does not include bonuses, allowances, overtime pay, military pay, pay given in addition to the base pay of the position as fixed by law or regulation * * *.

5 U.S.C. sec. 5332. The General Schedule.

(a) The General Schedule * * * is the basic pay schedule for positions to which this subchapter applies. Each employee to whom this subchapter applies is entitled to basic pay in accordance with the General Schedule. * * *

from an employee's basic pay was deposited in the Treasury of the United States to the credit of the fund by the Government agency which employed the employee covered by the Act. An amount equal to the amount withheld from an employee's basic pay was entered on that individual employee's retirement record pursuant to section 8334(f) of the Act. Amounts standing to the credit of an employee in the fund are not assignable, are not subject to execution or levy or other legal process, and are exempt from creditors' claims except that the Government may offset against any amount payable to an employee under the Act any indebtedness owing by that employee to the United States or its agencies. An employee has no access to his lump-sum credit except upon conditions set forth in the Act which in general are retirement, death, disability, or termination of service. The amounts deposited by the Government agency employing the individual employee are not credited to any individual employee's retirement record.

Pursuant to the provisions of section 8334 of the Act in effect for the years 1969 and 1970, the sums of $996 and $1,276, respectively (rounded off to the nearest dollar), were withheld from petitioner's wages and deposited with the Treasury to the credit of the fund. An equal amount in each of these respective years was deposited in the United States Treasury to the credit of the fund by the Government agency which employed petitioner.

For executive branch employees, the percentage rates of the section 8334 deductions under the Act from its original enactment on May 22, 1920, have been as follows:

| Date of service | Percentage rates for deductions from basic pay |
|---|---|
| From May 22, 1920, through July 1920 | 0 |
| From August 1920 through June 1926 | 2-1/2 |
| From July 1926 through June 1942 | 3-1/2 |
| From July 1942 through June 1948 | 5 |
| From July 1948 through September 1956 | 6 |
| From October 1956 through December 1969 | 6-1/2 |
| From January 1970 to present | 7 |

All benefits and administrative costs were initially paid from current section 8334 deductions from employees' salaries as the Government did not make an initial contribution to the fund. Subsequently in years prior to 1957, Congress appropriated substantial amounts for the fund from time to time but it did not

do so regularly and systematically. Beginning July 1, 1957, Government agencies have been making employer contributions to the fund equal to those amounts deducted from the basic pay of the employee pursuant to section 8334 of the Act.[3]

Pursuant to section 8334(b) of the Act, each employee is deemed to consent and agree to the deductions from basic pay provided for under section 8334(a) of the Act (hereinafter section

---

[3] H. Rept. No. 91-158, 91st Cong., 1st Sess. (1969), stated in this respect at pp. 3-4:

Since its enactment in 1920, the Civil Service Retirement Act has made provision for mandatory employee retirement system contributions to be held in trust in the civil service retirement and disability fund. Expressed as a percentage of salary withheld, employee contributions have increased, by amendment to the act, from the original 2½ percent to the current 6½ percent that became effective in 1956. During the entire history of the civil service retirement system, employee contributions have approximated one-half the normal cost.

In contrast to the specific requirements covering employee contributions, the act, prior to 1958, contained a statement to the effect that the Government's share would be financed by the submission of appropriation estimates necessary to finance the system "* * * and to continue this act in full force and effect." As a result, a number of methods for determining appropriations to cover the Government's share of costs have been used during this period of nearly 48 years. In the first 8 years, appropriations were neither recommended nor enacted, and benefit disbursements were financed by employee contributions to the fund. From 1929 to the World War II period, appropriations were generally recommended on a basis sufficient to cover normal cost and to amortize the unfunded liability by the end of the century. From 1929 through 1949, enacted appropriations coincided with Presidential recommendations.

In the 8-year period 1950-57, appropriations based on several different methods were recommended by the President. The Congress enacted lower appropriations on five occasions, higher amounts twice, and on one occasion approved the amount proposed. * * *

The present method of financing was recommended by the Civil Service Commission and enacted by the Congress in the Civil Service Retirement Act Amendments of 1956 (Public Law 84-854), effective at the beginning of fiscal year 1958. Under it, each employing agency contributes to the fund, from its appropriations for payment of salaries, amounts equal to deductions from the salaries of its covered employees at the rate of 6½ percent, and the rate is 7½ percent for Members of Congress. Adoption of the agency contribution provision achieved the desirable objective of assuring annual income approximating normal cost.

However, agency matching contributions are not sufficient to meet fully the Government portion of retirement cost, because no significant provision is now being made toward the unfunded liability or even toward the interest on it. * * *
* * *

The establishment of the civil service retirement fund suggested the intention that primary dependence for meeting benefit obligations would rest on contributions and investment income rather than on "the full faith and credit of the United States." However, it is now generally accepted that Federal staff retirement systems, backed by the credit of the United States, need not accumulate reserves on the basis required of private pension plans. Reflecting the interaction of political, socioeconomic, and fiscal considerations, national policy, rather than concepts of actuarial practice, has played the controlling role in final funding decisions. Therefore, the extent to which reserves are accumulated under a Federal retirement system, and its actuarial soundness, cannot be appraised on the same basis as in private plans.

8334 deduction).[4]

A Federal employee covered by the Act may make voluntary contributions to the fund in multiples of $25, but the total amount may not exceed 10 percent of the employee's basic pay for service rendered since August 1, 1920. Voluntary contributions earn 3-percent interest, compounded annually. The voluntary contributions purchase an additional annuity at retirement. A person may withdraw his voluntary contributions and accrued interest at any time before he retires. Sec. 8343(a), (b), and (d) of the Act.

The unrefunded amounts entered on an individual employee's retirement record include the employee's section 8334 deductions, sums deposited by an employee covering prior service for which no section 8334 deductions had been made or, if made, were refunded, and certain interest on such deductions and deposits. Such sums constitute an employee's "lump sum credit" under section 8331(8) of the Act. Interest is allowable on such deductions and deposits as follows: If the person has 5 or more years of civilian service, the amount credited to him will include interest to December 31, 1956, and no interest is allowable beyond that date; if the person has more than 1 and less than 5 years of civilian service, interest is credited to the date of termination of employment; and no interest is allowable if the person had 1 year or less of service with the Government. Interest, when it is credited, is computed at the rate of 4 percent to December 31, 1947, and at 3 percent thereafter, compounded annually.

Under section 8336 of the Act an employee is entitled to an annuity after becoming 55 years of age and completing at least 30 years of service; after becoming 60 years of age and completing at least 20 years of service; and under section 8338(a) of the Act after becoming 62 years of age and completing 5 years of service. Total disability payments are payable after 5 years of service under section 8337(a) of the Act. Generally employees covered by the Act are required to retire at age 70 if they have completed 15

---

[4] 5 U.S.C. sec. 8334:

(b) Each employee or Member is deemed to consent and agree to these deductions from basic pay. Notwithstanding any law or regulation affecting the pay of an employee or Member, payment less these deductions is a full and complete discharge and acquittance of all claims and demands for regular services during the period covered by the payment, except the right to the benefits to which the employee or Member is entitled under this subchapter.

years of service. Pursuant to section 8333(a) and (b) of the Act there are two general requirements which a classified employee must meet before he or his survivors are eligible for an annuity: (1) He must have completed at least 5 years of civilian service with the Government; (2) he must have been subject to the provisions of the Act for at least 1 year out of the last 2 years preceding separating from the service unless separation is due to death or disability. If a separated employee, unless he is separated from the civil service because of death or disability, has completed less than 1 year of civilian service under the retirement system within the 2-year period immediately preceding his last separation, he may receive a refund of the amounts deducted from his pay covering this period and, if desired, any unrefunded amounts deducted for any prior periods of civilian service.

An employee covered under the Act who retires will receive the annuity to which he is entitled and for which he is eligible unless his separation occurs and application for refund of his lump-sum credit is filed with the Civil Service Commission at least 31 days before the commencing date of any annuity for which he may be eligible. Pursuant to section 8339(a) and (f) of the Act, the amount of the annuity payable upon retirement is directly related to an employee's earnings as determined under section 8331(4) of the Act and years of service with a maximum annuity of 80 percent of the employee's highest 3-year average basic earnings. The amount of the annuity is reduced under section 8339(j) of the Act unless the employee elects against the survivor-annuity benefits to widows or widowers and dependent children as provided for under section 8341 of the Act. If all annuity rights under the Civil Service Retirement Act which are based on the service of a deceased employee or Member terminate before the total annuity paid equals the lump-sum credit, the difference is paid to the survivors or next of kin of the employee or Member. Sec. 8342(e) of the Act.

The primary sources of credits to the fund are: (1) Section 8334 deductions from the basic pay of employees; (2) contributions by the employing Government agencies in amounts equal to their employees' section 8334 deductions; (3) appropriations to the fund, as a Government contribution, of amounts equivalent to a portion of the interest on the unfunded liability as computed at the interest rate used in the most recent valuation of the liability

and of a portion of amounts equivalent to the cost for the year of allowing military service under section 8348(g) of the Act (effective July 1, 1970); (4) appropriations to the fund to finance the unfunded liability created by statutes which provide new or liberalized benefits or extend coverage of the Act to new groups of employees or provide increases in pay on which the benefits are computed, such appropriations being authorized by virtue of the statutory increase in benefits pursuant to section 8348(f) of the Act;[5] and (5) interest earned from the investment of moneys not presently needed for payments from the fund as well as gains on the sale of such investments, such amounts being invested in interest-bearing securities of the United States in accordance with section 8348(c) of the Act. The amounts in the United States Treasury to the credit of the fund are invested in United States Government securities. Investment in the private market is not permitted by the Act. In 1973 approximately 80 percent of the fund's assets was invested in interest-bearing special certificates of indebtedness of the United States and 20 percent was invested in marketable interest-bearing obligations of the United States.

Under the provisions of the Act the term "fund balance" means as of a given date the investments of the fund calculated at par value plus the cash balance of the fund on the books of the Treasury. Sec. 8331(18) of the Act.

Under the provisions of the Act the term "unfunded liability" means the estimated excess of present value of all benefits payable from the fund to employees and Members, and former employees and Members, subject to the Act, and their survivors over the present value of deductions to be withheld from future basic pay of employees and Members (section 8334 deductions) subject to the Act, as well as future agency contributions to be made on their behalf, plus the present value of Government appropriations to the fund pursuant to section 8348(f) of the Act, plus the fund balance as of the date the unfunded liability is determined. Sec. 8331(19) of the Act. Basically, the unfunded liability is determined by assuming that no additional employees will be covered by the Act subsequent to the determination date and then determining, based on actuarial predictions, what the

---

[5] New or liberalized annuity benefits were not payable until and unless an appropriation was made to the fund in an amount sufficient to prevent an increase in unfunded accrued liability of the fund under former sec. 8348(g) of the Act, 72 Stat. 1064 (1958).

total cost of the obligations under the Act will be, assuming present employees will continue to earn benefits until their actuarily predicted cessation of work and deducting from the amount the actuarily predicted amounts which will be paid into the fund under the Act with respect to those employees, plus the fund balance as of the date the unfunded liability is determined.

As of June 30, 1969, the fund balance was $20.6 billion. On that date the unfunded liability was $57.7 billion.

As of June 30, 1969, total aggregate section 8334 deductions, voluntary contributions, and service credit payments from the inception of the fund were $18.2 billion. The total aggregate lump-sum credit as of that date is impossible to determine because records of the amounts retirees have received of their lump-sum credit in annuities are not retained. Actual aggregate refunds and death claims as of June 30, 1969, were $3.2 billion, so the total aggregate lump-sum credit as of June 30, 1969, could not have exceeded $15 billion.

The Government has liberalized benefits many times over the years without appropriating sufficient funds to equal the additional actuarily computed liability attributable to the increased benefits. Some of these liberalized benefits include: (a) Annuity increases to people already receiving benefits but who are no longer contributing; (b) early retirement, without corresponding reduction in benefits; (c) underfinanced past service such as military service for which no contributions were made; (d) higher annuities based on service contributed for at rates designed to finance a much lower level of benefits; and (e) general pay raises.

As of June 1969, the annual input into the fund from employees' section 8334 deductions and equal contributions by Government agencies was 13 percent of payroll, whereas benefits and administrative expenses under the Act cost an amount equal to 13.86 percent of payroll. It was estimated that at that rate by 1975 the cost of benefits and administrative expenses under the Act would exceed the income of the fund from all sources and by 1987 the fund balance would be completely exhausted. Because of this situation legislation was proposed to stabilize and control the unfunded liability. In 1969 Pub. L. 91-93 was enacted which contained the following financing provisions: (1) The employees' section 8334 deductions and the Government agencies' employer contributions were raised to 7 percent each, for a total of 14

percent of payroll, to cover the costs of current benefits and administrative costs which were 13.86 percent of payroll at that time; (2) all future legislation creating retirement liability by benefit or pay increases or extension of coverage would be deemed to authorize appropriations to the fund to finance the unfunded liability attributable thereto on a 30-year amortization schedule; and (3) permanent indefinite appropriations were provided in gradually increasing amounts over 10 years so that they would equal, in 1980, 100 percent of the amount equivalent to what would be the interest on the unfunded liability each year, computed at the interest rate used in computing the unfunded liability, as well as the estimated costs of annuities for that year attributable to credit allowed for military service. Under these financing provisions, it is estimated that the unfunded liability will level off at approximately $76 billion in 1980 with the exception of additional liability attributable to the cost-of-living increases pursuant to section 8340 of the Act.

The Civil Service Commission has the administrative responsibility for the processing and adjudicating of all claims for benefits under the Act.

Suits based on claims for benefits under the Act are made directly against the United States. Suits to recover benefits under the Act are deemed to be claims founded upon a law of Congress and are within the jurisdiction conferred upon Federal courts by the Tucker Act, section 1346 et seq. of title 28 of the United States Code. Pursuant to the provisions of sections 8312, 8313, 8314, and 8315 of title 5 of the United States Code, a Federal employee forfeits his right to receive certain retirement benefits under the Act if he is convicted of certain offenses or is guilty of certain conduct. However, when payment of annuity is denied pursuant to 5 U.S.C. section 8312, 8314, or 8315, the unrefunded amount contributed by the individual toward the annuity shall be refunded, generally with interest, to him or his beneficiary pursuant to 5 U.S.C. section 8316.

Petitioners on their income tax returns for the calendar years 1969 and 1970 deducted the amounts of $996 and $1,276, respectively, representing the sums withheld from petitioner's wages pursuant to section 8334 of the Act.

Respondent in his notice of deficiency disallowed the deduction for amounts withheld under section 8334 of the Act

from petitioner's wages for each of the taxable years 1969 and 1970.

Although a deduction for the amounts withheld from petitioner's wages was claimed on their tax returns, on brief petitioners contend that the section 8334 deductions are not currently taxable income to cash basis taxpayers. Petitioner contends that the amounts which were withheld from his salary were contributions by his employer and not by him since he was allowed no option to receive the amount in cash. Petitioner argues that the provision of the statute that he consent to the deductions is nothing more than an advance agreement for a reduced salary with an employer's payment to a retirement fund of the amount of the reduction. Petitioner concludes that if the civil service retirement plan is considered a qualified pension trust under section 401(a), I.R.C. 1954,[6] then under the provisions of section 402(a) the amount withheld from his salary, being in effect a contribution to the qualified employee's trust by his employer, is not includable in his taxable income until distributed or made available to him so as to be taxable to him under section 72. Petitioner points out that respondent in his rulings has taken the position that the civil service retirement plan is a qualified pension plan under section 401(a). See Rev. Rul. 70-150, 1970-1 C.B. 106; I.T. 4102, 1952-2 C.B. 173.

Petitioners' primary contention is, however, that under our holding in *Thomas Trebotich,* 57 T.C. 326, 334-336 (1971), affd. 492 F. 2d 1018 (C.A. 9, 1974), the retirement system under the Act is not a qualified plan under section 401(a) as there was no independent trust or similar vehicle outside the Government control into which funds were placed and the fund was not adequately funded as of June 30, 1969. Petitioner contends that under the provisions of section 402(b) relating to taxability of a beneficiary of a nonexempt trust, the amounts withheld from his salary are not taxable to him since the Act does not provide for an independent trust not controlled by his employer in which he has an interest. Petitioner argues that there is no basis aside from the provisions of section 402(a) or (b) for taxing the amounts withheld from his salary to him in the years in which the amounts are withheld since he is a cash basis taxpayer and such amounts have not been constructively received by him and no

---

[6] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

benefit in the nature of property has been received by him. Petitioner points out that he could not elect to receive the section 8334 deductions in cash and argues on this basis that these amounts are neither cash nor its equivalent so as to constitute constructive income to him under the holdings in *Commissioner v. Oates,* 207 F. 2d 711 (C.A. 7, 1953), affirming 18 T.C. 570 (1952); *Ray S. Robinson,* 44 T.C. 20 (1965); *Basil F. Basila,* 36 T.C. 111 (1961); *Ernest K. Gann,* 31 T.C. 211 (1958); *Howard Veit,* 8 T.C. 809 (1947), but are merely unsecured promises by his employer to pay him the amounts when due within the meaning of Rev. Rul. 71-419, 1971-2 C.B. 220; Rev. Rul. 69-650, 1969-2 C.B. 106; Rev. Rul. 60-31, 1960-1 C.B. 174.

Petitioners recognize that we have on two occasions held that amounts withheld from a civil service employee's salary for payment into the civil service retirement fund were not excludable from that employee's taxable income in the year the amounts were withheld. *Cecil W. Taylor,* 2 T.C. 267 (1943), affirmed sub nom. *Miller v. Commissioner,* 144 F. 2d 287 (C.A. 4, 1944); *Isaiah Megibow,* 21 T.C. 197 (1953), affd. 218 F. 2d 687 (C.A. 3, 1955). However, they argue that the same arguments were not present in those cases which are being presented in the instant case and that those cases were not fully considered.

Petitioners further contend that the holdings in the *Taylor* and *Megibow* cases treat a Federal civil service employee differently from the treatment accorded to employees of private corporations under similar circumstances. Petitioners argue that this interpretation of the provisions with respect to taxability of a beneficiary under an employee's pension plan or a deferred-income arrangement is in violation of the due process clause of the fifth amendment to the Constitution of the United States as discriminatory against a Federal employee as compared to other persons. Petitioners cite, in support of their contention, a number of cases including *Moritz v. Commissioner,* 469 F. 2d 466 (C.A. 10, 1972), reversing 55 T.C. 113 (1970).

The taxpayer in the case of *Isaiah Megibow, supra,* contended, as does petitioner in the instant case, that the amount withheld from his salary as a Federal civil service employee was not a part of his salary but was a payment by the United States, his employer, into a qualified pension plan on his behalf and therefore was not taxable to him under the provisions of section

165(b), I.R.C. 1939, which contained provisions comparable to those of section 402(a), until distributed to him.[7]

In the *Megibow* case we stated in part (21 T.C. at 199-200):

The amount here in question is a part of Isaiah's salary as an employee of the Internal Revenue Service and is not an amount received under an annuity contract. Furthermore, it was not an amount contributed by his employer to the Civil Service retirement and disability fund created by the Act of May 22, 1920, but, on the contrary, was a contribution to that fund by Isaiah of a part of his salary. The $375.28, being a part of the fixed salary of Isaiah, was taxable to him as income unless there was some provision of the Code providing otherwise. He is deemed by law to have consented and agreed to the deduction from his compensation, and upon payment of the remainder of his salary, all claims for the services rendered covered by the payment, except the right to the benefits to which he is entitled as a Civil Service employee, are fully discharged. See 5 U.S.C. 722. Section 724 of that Code directs that the amount so deducted shall be credited to his individual account in the fund. He could have the amount with interest repaid to him should his service terminate prior to his retirement with less than 20 years of service. The system is designed to be favorable to employees so that the benefits will exceed the worth of their contributions with interest. * * * The cases of *Raines* v. *Board of Trustees,* 365 Ill. 610, 7 N.E. 2d 489, *Pecoy* v. *Chicago,* 265 Ill. 78, 106 N.E. 435, and *Dallas* v. *Trammell,* 129 Tex. 150, 101 S.W. 2d 1009, which the petitioner cites for the proposition that mandatory withholdings from the pay of an employee for deposit in a pension fund actually represent contributions by the employer, are not accepted as authority for the proposition that this part of the petitioner's salary was not taxable to him under the provisions of the Internal Revenue Code.

As is clear from the above quotation from the *Megibow* case, we considered the same argument with respect to the amount withheld from the taxpayer's salary being a contribution to a qualified pension plan by the employer that petitioner has made in the instant case. As respondent points out, the salaries of Federal employees in the various grades provided by civil service are set by statute, and as the stipulated facts show [8] this statutory

---

[7] Sec. 1.402(a)-1(a)(1)(i), Income Tax Regs., in amplifying the provisions of sec. 402(a)(1), I.R.C. 1954, provides as follows:

(a) *In general.* (1)(i) Section 402 relates to taxation of the beneficiary of an employees' trust. If an employer makes a contribution for the benefit of an employee to a trust described in section 401(a) for the taxable year of the employer which ends within or with a taxable year of the trust for which the trust is exempt under section 501(a), the employee is not required to include such contribution in his income except for the year or years in which such contribution is distributed or made available to him. It is immaterial in the case of contributions to an exempt trust whether the employee's rights in the contributions to the trust are forfeitable or nonforfeitable either at the time the contribution is made to the trust or thereafter.

[8] We did not set forth in our opinion the detail contained in the stipulated facts with respect to the computation of the amount of the salary check issued to a Federal employee. However, since we have found all the facts as stipulated, we consider these six pages of

salary is the starting point in computing the amount of the paycheck to be issued to each employee. If for some reason such as being a temporary employee or a nonelecting Member of Congress, a person is not covered by the Retirement Act but does have a salary fixed by statute, his gross pay is computed on the basis of the statutory salary for his classification or grade even though there is no section 8334 deduction made for an amount withheld under the Retirement Act. In our view petitioners have shown no basis for their position that the amount withheld under the Civil Service Retirement Act from an employee's basic pay is not a part of the employee's compensation. We therefore conclude that there is no basis for changing the holding we made in *Isaiah Megibow, supra,* that the withheld amount is an employee's payment into the civil service retirement fund and not an employer's payment.

Even though petitioner recognizes that it has been the position of the Commissioner in his rulings for many years that the civil service retirement plan is a qualified plan under section 401(a) or the predecessor section of the revenue laws, he contends that in fact this plan is not such a qualified plan under our holding in *Thomas Trebotich,* 57 T.C. 326 (1971), affd. 492 F. 2d 1018 (C.A. 9, 1974). Petitioner points to our statement in *Trebotich* (p. 334) that, "In the light of the legislative history and the court decisions, we conclude that a qualified plan must be funded." He states that it is clear from the stipulated facts that the civil service retirement plan is not funded. He points to the stipulated fact that initially the Government put nothing into the plan and the further stipulated fact that up to 1957 amounts were from time to time put into the fund but not on a consistent basis, and that since 1957 the Government has not put the full amount into the fund which would be required to have the plan fully funded. Petitioners state that the civil service retirement plan is unfunded for the same reasons that the fund involved in the *Trebotich* case was held to be unfunded. They further state that if the amounts paid into the fund by the Government were to be considered as a funding of the plan, then the plan fails to meet the qualifications of a qualified plan under our further holding in the *Trebotich* case (p. 335) that, "Clearly, if the employers merely accumulated the funds in reserve accounts established and

----

detail to be a part of our findings.

controlled by them, the arrangement would not constitute the funding of a qualified plan." Petitioners state that under the Civil Service Retirement Act, there is no independent fund but rather the fund is under the control of the United States Treasury Department which is a part of the Federal Government, the employer, and that the funds must be placed in United States Government obligations and not in private investments so that it remains merely a reserve account in the employer's control.

In our view it is unnecessary to decide whether petitioner is correct in his primary contention that the Civil Service Retirement Act does not establish a qualified plan under section 401(a). If we assume, arguendo, that petitioner is correct in this position, it does not follow that the amounts withheld from his salary in the years here in issue are not includable in his taxable income. Petitioner argues that the amounts withheld from his salary are not includable in his income under section 402(b)[9] which provides that contributions by an employer to a nonexempt employees' trust are includable in the employee's gross income as property transferred in connection with services by the employee since the civil service retirement fund is not a "trust." As we pointed out in connection with petitioner's argument with respect to section 402(a), the amounts withheld from petitioner's salary and placed in the civil service retirement fund are not employer contributions but rather employee contributions. Furthermore, for reasons we will discuss in connection with petitioner's final argument, in our view the civil service retirement fund should be viewed as a fund in which petitioner had an interest.

Petitioner's final argument is that the Civil Service Act, by its provision that an employee is deemed to consent and agree to the deduction from his basic pay when he accepts Federal employment, in effect, creates an agreement with his employer providing for deferred compensation comparable to the agreements in *Ray S. Robinson,* 44 T.C. 20 (1965); *Basil F. Basila,* 36 T.C. 111 (1961); *Ernest K. Gann,* 31 T.C. 211 (1958);

---

[9] SEC. 402(b). TAXABILITY OF BENEFICIARY OF NONEXEMPT TRUST.— Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services), except that the value of the employee's interest in the trust shall be substituted for the fair market value of the property for purposes of applying such section. * * *

*Howard Veit,* 8 T.C. 809 (1947); *Commissioner v. Oates,* 207 F. 2d 711 (C.A. 7, 1953), affirming 18 T.C. 570 (1952), as well as the agreement involved in Rev. Rul. 71-419, 1971-2 C.B. 220, and the contracts which were held to not result in current income in Rev. Rul. 69-650, 1969-2 C.B. 106. Each of the cases cited by petitioner and the examples given in the revenue rulings involved an agreement entered into between a taxpayer and either an employer or a person with whom the taxpayer had a contractual arrangement for payment for services, which agreement was entered into prior to the time the payments were earned that payment of part of the amount would be deferred. In each instance we held that under the agreement in effect at the time the amounts involved were earned, the cash basis taxpayer involved in the case had no right to receive the deferred portion of earnings and that therefore only the amount he had the right to receive was taxable to him, the balance being taxable to him at such time as he had an unfettered right to receive it under the agreement with his employer or agent. In each of these cases we distinguished the cases involving assignment of income, pointing out that in the cases involving assignment of income the taxpayer was contending that he was relieved of tax on the assigned income and not merely that the includability of the amount in his income should be deferred until it was received because of his being a cash basis taxpayer.

*James F. Oates,* 18 T.C. 570 (1952), a Court-reviewed case, which was the basis of the decision in the subsequent cases dealing with this subject, was originally nonacquiesced in by respondent. However, in Rev. Rul. 60-31, 1960-1 C.B. 174, on which petitioner also relies, respondent withdrew his non-acquiescence in the *Oates* case, accepted that case, and set forth numerous examples of situations which he considered comparable to that in the *Oates* case and other cases of this Court following the *Oates* case. In that ruling (p. 177), respondent concluded that a "mere promise to pay, not represented by notes or secured in any way, is not regarded as a receipt of income within the intendment of the cash receipts and disbursements method." In that ruling respondent (p. 179) distinguished the situation in cases such as *James F. Oates, supra,* from certain other cases where payments for future benefits made by or on behalf of a taxpayer were includable in his taxable income when made on the basis that under the facts and circumstances of the *Oates* and similar

cases "no trusts for the benefit of the taxpayers were created and no contributions are to be made thereto." Respondent in this ruling held that where an employer made payments resulting in a current vested right or benefit to an employee, such right or benefit in and of itself would constitute compensation to the employee in the year the payment was made. Respondent in his ruling pointed out that which we have also pointed out in numerous cases, that each case involving deferral of compensation requires a determination on its facts as to whether the doctrine of constructive receipt is applicable. See *Morris Zeltzerman,* 34 T.C. 73, 86 (1960).

In the case of *Cecil W. Taylor, supra,* in discussing the nature of the rights acquired by an employee of the Federal Government who has a portion of his salary withheld under the Civil Service Retirement Act, we stated as follows at pages 274-275:

> While the matter is certainly not free from doubt, we are inclined to the view, particularly in the light of the *Dismuke* case, that at least to the extent that it consists of contributions by the employee out of his basic salary, the payment provided by the Retirement Act is a true annuity comparable to one which might be subscribed for by any employer for the benefit of an employee and that it follows that if under such circumstances an employee on a cash basis is chargeable with the contribution to the cost of such an annuity made out of his salary, these petitioners were required to include the amount of the disputed withholding in their taxable income.
> * * *
> It seems to us to follow that the disputed amounts withheld out of petitioners' salaries were, as the *Brodie* case declares, transformed into benefits created for the employees which were in the nature of compensation additional to that received in cash, and that these amounts are equally a part of petitioners' taxable income. * * *

At page 271 we stated:

> These aspects of the retirement plan seem to us to demonstrate that there have been purchased by the employee substantial rights, of a value which can in no event fall materially below the amount of his own contribution, which presently belong to him, and which are unequivocally provided for his ultimate benefit under whatever contingency and in whatever circumstance the occasion for that benefit should arise. They are in that respect comparable to, and for our purposes indistinguishable from, an annuity contract, of which the employer constitutes itself the issuer, setting aside reserves for that purpose and making investments thereof comparable to those which would be employed by companies engaged in that business.

The *Brodie* case to which reference was made in the *Taylor* case is *Renton K. Brodie,* 1 T.C. 275 (1942). It involved a purchase by

an employer for certain employees otherwise entitled to receive bonus payments for the year of paid-up annuity contracts with the amount which each such employee otherwise would have received and a delivery of the contract to the employee. We pointed out in the *Brodie* case that unquestionably the annuity contract which was procured by the company and the taxpayer upon joint application was intended as additional compensation for the employee in the current year. In the *Brodie* case we further pointed out that fact that the taxpayer did not have the free use of funds in the current year, since they were placed in annuity contracts which could not be assigned and had no current cash surrender value, did not require a conclusion that what the taxpayer received was not a current benefit which had a value such as to require the inclusion of the amount paid for the contract in the taxpayer's income in the year in which the contract was purchased for his benefit. In neither the *Taylor* nor the *Brodie* case was our decision based on the doctrine of constructive receipt by the employee of the amount of the compensation of the employee withheld to purchase annuity benefits for him. In each of these cases the basis for our decision was that the taxpayer received an annuity contract of such value as to constitute an additional property benefit paid to the employee at least equal to the amount of the withheld salary which had been included in his income by respondent. Both the *Taylor* and the *Brodie* cases were Court reviewed and in each of these cases there was a dissent. The dissent in the *Taylor* case resembled in many respects petitioners' argument in the instant case.[10]

While on the surface petitioner's argument that the cases dealing with deferred compensation have application to the instant case seems to have some validity, its validity is destroyed when the manner of the investment of the civil service retirement fund is deemed to constitute the purchase of a present annuity for the Federal employee. This is the view of the retirement fund we took in the *Taylor* case. Even though the cases on

---

[10] Following is the dissent in *Cecil W. Taylor, supra* at 276:

STERNHAGEN, *J.,* dissenting: These taxpayers use the cash basis for their income tax returns, and the evidence shows that the amounts withheld from their pay are involuntary contributions which are not presently theirs and may not, in the present state of the law, be regarded as either actual or constructive income. This view, I think, is indicated by *Pennie v. Reis,* 132 U.S. 464; *MacLeod v. Fernandez,* 101 Fed. (2d) 20; *Griffith v. Rudolph,* 298 Fed. 672; *Dillis C. Knapp,* 41 B.T.A. 23; *Renton K. Brodie,* 1 T.C. 275. In my opinion, the determination of the deficiencies should be reversed.

which petitioner relies involving deferred compensation under arrangements between taxpayers and private companies are all subsequent to the *Taylor* case, that case is not overruled or distinguished in any of these cases. In each of the cases involving private employers as well as in the situations set forth in respondent's rulings, the stress is laid on the fact that no fund is put outside the control of the private employer to secure the benefit to the employee in such a manner as to result in a true property interest being created for the employee. None of those cases involved funds invested for the employee which created a current benefit segregated to the employee's use even though not currently obtainable by the employee as was the situation in the *Brodie* case.

This, therefore, brings us again to the question of whether, since the civil service retirement fund is under the control of the Secretary of the Treasury and is invested in Federal Government obligations, we should continue to hold as we did in *Cecil W. Taylor, supra,* in light of the later cases involving private employers' deferred-compensation arrangements, that an independent property benefit in the nature of an annuity contract was currently created for petitioner's benefit. If the amounts involved in the various deferred compensation cases had been required to be and were currently invested by the private employers in United States Government obligations which were held in a trust fund by the Secretary of the Treasury, or as for that matter by any other independent trustee, for the taxpayer's benefit, the cases would have been totally different, and the considerations in determining the taxability of the amount referred to as the "deferred compensation" would have been completely different. Since the Federal Government consists of so many various parts, in our view we cannot accept petitioner's contention that in viewing the validity of the fund as in effect creating annuity rights in an employee we should consider the Federal Government as one entity and view the civil service retirement fund, which is invested in Government obligations and is under the control of a specific department of the Government, as not establishing a fund set aside to create an annuity or other right for the employee with the portion of his salary withheld.

The same argument which has been made by petitioners in the instant case was made in the case of *Hogan v. United States,* 367

F. Supp. 1022 (E.D. Mich. 1973). In that case the court disposed of the taxpayer's contention that the holdings in *Miller v. Commissioner, supra,* affirming the *Taylor* case, and in *Isaiah Megibow, supra,* "are no longer controlling because of recent Internal Revenue Service rulings with respect to private contractual arrangements between employers and employees," by quoting at length from the holdings in the *Miller* and *Megibow* cases, and concluded that those cases were still controlling. In *Hogan v. United States, supra,* the taxpayer had argued, as does petitioner here, that the Civil Service Retirement Act did not create a qualified pension plan but that the plan was a nonqualified deferred-compensation plan. The court in *Hogan v. United States, supra,* did not base its decision on whether the Civil Service Act created a qualified plan but rather held as we do here that whether the plan created by the Civil Service Act was a qualified plan or a nonqualified plan, the amount withheld from the employee's salary to be put into the plan constitutes current income to the employee in the year of the withholding.

Since we conclude that there are factual differences in the present case and the cases involving "deferred compensation" arising from certain private compensation agreements, we do not reach petitioners' contention that to reach differing results as to taxability of a withheld portion of the salary of a Federal Government employee and an employee of a private employer under the same factual situation is violative of the fifth amendment of the United States Constitution.

We decide the issue here presented in favor of respondent, but, because of other issues not litigated,

*Decision will be entered under Rule 155.*