Isaiah and Regina MEGIBOW,
Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.
No. 11321.

United States Court of Appeals,
Third Circuit.

Argued Oct. 7, 1954.

Decided Jan. 4, 1955.

Isaiah Megibow, pro se.

John J. Kelley, Jr., Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This appeal is brought by Isaiah and Regina Megibow after an unfavorable decision by the Tax Court[1] on two questions concerning their 1949 joint income tax return.

In 1944, the taxpayers purchased a house which they occupied as a personal residence until they sold it in late 1949. During that occupancy, they paid $1341.-38 for taxes and interest on a mortgage encumbering the property but did not list these expenditures as itemized deductions on their tax returns. In each of those years, the taxpayers took the optional standard deduction allowed by the Internal Revenue Code.

When filing their tax return for 1949, the taxpayers notified the Commissioner for the first time of their election to capitalize the $1341.38, thereby reducing the profit on the sale of the residence in 1949.

The Tax Court upheld the Commissioner's determination that the $1,-341.38 was not properly chargeable to

1. 1954, 21 T.C. 197.

capital account and therefore could not be considered in computing the profit realized on the sale of the residence. We agree.

In the Treasury Regulations, the Commissioner has enumerated the taxes and carrying charges which are properly chargeable to capital account with respect to property.[2] These include taxes and carrying charges on unimproved property, certain expenditures made to improve or develop property, and any other items which the Commissioner thinks are properly chargeable to capital account.

■ The taxpayers admit that the taxes and interest which they paid on their personal residence do not fall within the categories mentioned in Section 29.24–5, but they contend that the Regulation is invalid because the Commissioner, under the authority given to him by Section 24(a) (7) of the Code,[3] had to treat all types of property alike and could not allow taxes and carrying charges on unimproved property to be charged to capital account unless similar treat-ment was accorded taxes and carrying charges on all types of property, including a personal residence.[4]

The Commissioner's position is that his authority under Section 24(a) (7) is not limited so as to prohibit a determination that taxes and carrying charges on certain types of property may be capitalized but that similar taxes and carrying charges on other types of property cannot be capitalized.

■ The Commissioner's determination of his authority should stand unless plainly inconsistent with the language of the Code, which is not the situation presented. We cannot say that the Regulation is invalid since Section 24(a) (7) of the Code can reasonably be read as the Commissioner has read it.[5] Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831; Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 51 S.Ct. 144, 75 L. Ed. 397.

The taxpayers insist quite vigorously that the Commissioner's interpretation

---

2. U.S.Treas.Reg. 111, § 29.24–5, 26 Code Fed.Regs. § 29.24–5 (1949).

3. "§ 24. Items not deductible
"(a) *General rule.* In computing net income no deduction shall in any case be allowed in respect of—
\* \* \* \* \*
"(7) Amounts paid or accrued for such taxes and carrying charges as, under regulations prescribed by the Commissioner with the approval of the Secretary, are chargeable to capital account with respect to property, if the taxpayer elects, in accordance with such regulations, to treat such taxes or charges as so chargeable." 26 U.S.C. 1946 ed., § 24.

4. The taxpayers have argued that Section 29.24–5 of Treas.Reg. 111 is contrary to Section 29.113(b) (1)–1(c), which, they say, allows them to capitalize taxes and carrying charges on improved property. With this we cannot agree. Taxpayers' quotations in their brief are incomplete. The relevant parts of Section 29.113(b) (1)–1(c) read:
"Capital expenditures and carrying charges with respect to property, whether real or personal, improved or unimproved and whether productive or unproductive, such as taxes and interest, as to which under these regulations there is an election to treat either as chargeable to capital account or as an allowable deduction in the manner provided in section 29.24–5(c) but for which there have been taken no deductions by the taxpayer in determining net income for the taxable year, or a prior taxable year, are properly chargeable to capital account. \* \* \*"
This section only means that taxes and carrying charges may be capitalized "as to which under these regulations" there is an election either to capitalize or deduct. We need to look to Treas.Reg. 111, § 29.-24–5 to see if an election is permitted.

5. In the Commissioner's interpretation, the plurals "taxes" and "carrying charges" in the phrase "such taxes and carrying charges" in Section 24(a) (7) are plurals used to indicate an enumeration of specific, individual taxes, rather than generic plurals, and thus he is not limited to classifying taxes according to kind and then allowing certain kinds or types to be chargeable to capital account. Thus the plural "taxes" can be broken down into a tax on unimproved property and a tax on improved property.

of his authority is diametrically opposed to Congressional intent. In their brief they support their argument by quotations from the House and Senate Reports. An examination of the reports themselves discloses that the taxpayers have used half-sentence quotations which carry an erroneous impression as to the intent of Congress.

Taxpayers' position that Congress intended all property, whether productive, unproductive, improved, or unimproved to be treated alike stems from the 1942 amendment to Section 113(b) (1) (A) and the House and Senate Reports explaining the amendment. Prior to the 1942 amendment, Section 113(b) (1) (A) provided that in computing gain or loss from the sale or other disposition of property, proper adjustment could be made for "expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years * *." The only relevant change made by the Revenue Act of 1942 was the deletion of the words "including taxes and other carrying charges on unimproved and unproductive real property." The taxpayers tell us, quoting from the House and Senate Reports, that "The clause with respect to unimproved and unproductive real property has been deleted from Section 113(b) (1) (A) so as to make it clear that the provisions of that subparagraph * * * are not limited to the case of taxes and carrying charges on unimproved and unproductive real property, but apply with equal force whether the property to which account the items are properly chargeable is real or personal, improved or unimproved, productive or unproductive. * * *" Accordingly, the taxpayers continue, when Congress wrote Section 24(a) at

the same time and by the same Act which amended 113(b) (1) (A) and said that the Commissioner could determine such taxes and carrying charges that are chargeable to capital account with "respect to property," it intended all property to be treated alike.

But let us fill in the gaps in the taxpayers' quotation from the reports. (The Senate and House Reports use identical language.) The complete sentence to which the taxpayers refer is as follows: "The clause with respect to unimproved and unproductive real property has been deleted from Section 113(b) (1) (A) so as to make it clear that the provisions of that subparagraph, *to the effect that no adjustment of basis under that section shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years,*[6] are not limited to the case of taxes and carrying charges on unimproved and unproductive property, but apply with equal force whether the property to which account the items are properly chargeable is real or personal, improved or unimproved, productive or unproductive." H.R. Rep. No. 2333, 77th Cong., 2d Sess. 82 (1942); Sen.Rep. No. 1631, 77th Cong., 2d Sess. 98 (1942).

From the complete sentence, it is obvious that that which Congress wanted to make clear was not that they were changing the law substantively and wanted all property treated alike as to what taxes and carrying charges could be capitalized; rather, it was to be made clear that the provisions of 113(b) (1) (A), to the effect that if an item had been deducted it could not be capitalized, applied to all types of property.

In addition, the House Report points out,

"* * * Under the present law taxpayers have the option of applying taxes or other carrying charges on unimproved or unproductive real estate in adjustment to the basis of

---

6. The italicized portion was omitted from the taxpayer's quotation.

such property or of taking such taxes or charges as deductions.

"It has been shown that in order to comply with proper accounting methods, other taxes and charges should be allowed the same optional treatment. For example, the costs of labor and materials used in the construction of a building are added to the cost basis of such building for the purposes of the depreciation allowance and for the purpose of determining gain or loss upon the sale or other disposition of such building. Items such as social security taxes are in reality a part of the labor cost and should be capitalized rather than used as a deduction.

"The bill corrects these accounting difficulties by allowing, at the option of the taxpayer, such taxes and other charges as are properly chargeable to capital account to be either capitalized or taken as deductions." H.R.Rep. No. 2333, 77th Cong., 2d Sess. 47, 48 (1942).

This shows no intention to treat all types of property alike, only an intention to allow certain taxes and carrying charges on other than unimproved property to be capitalized, and the Commissioner was given the authority to determine what items should be properly chargeable to capital account.

Because of the view we take, we need not consider other questions raised by the taxpayers as to when an election to capitalize an item must be made and whether the taking of the optional standard deduction during the years they paid taxes and interest precluded them from electing to capitalize the items.

Taxpayer Isaiah Megibow had been a Civil Service employee for a number of years and in 1949 was a technical advisor in the Internal Revenue Service. During 1949, $375.28 was withheld from his salary as contributions to the Civil Service Retirement and Disability Fund. The taxpayers contend that the $375.28 should be excluded from their gross income for 1949 because the amount should be treated as a contribution by the employer (under Section 165(b) of the Code) to a fund which meets the requirements of Section 165(a), and as such is not taxable as income to the employee.[7]

■ The $375.28 was a part of the taxpayer's fixed salary for 1949, but this amount was deducted because when the taxpayer was employed by the Internal Revenue Service he was deemed by law to have consented and agreed to the withholding of it as his contribution to the Civil Service Fund. Since the taxpayer consented to the deductions, they cannot be considered the employer's contributions. The identical question was well considered in Miller v. Commissioner of Internal Revenue, 4 Cir., 1944, 144 F.2d 287, where such contributions were found to be taxable to the employee.

■■ The taxpayers refer us to the case of MacLeod v. Fernandez, 1 Cir., 1938, 101 F.2d 20, certiorari denied, sub nom. Toste v. Macleod, 1939, 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471, to support their contention that they had no vested rights in the Civil Service Fund as a result of the deductions and therefore the money contributed to the fund was not their contribution. It does not follow that because an employee has no vested rights in the fund he could not have made contributions to the fund, but we meet the taxpayers' contention as a similar contention was met in the Miller case in which the court said:

7. The Code provides that if an employer's trust or pension fund meets certain requirements set up in Section 165(a), any contributions to that fund by the employer are not taxable to the employee as part of his salary in the year the contributions are made; rather, the employee is taxed in the year distributions are made to him. Taxpayer in the present case received no distributions in 1949 from the Civil Service Fund. Thus the $375.28 is not taxable as part of his salary if the amount is considered an employer's contribution to an exempt fund.

"There is no merit in the contention of the petitioners that * * * the employee had no vested rights under the Civil Service Retirement Act [5 U.S.C.A. § 691 et seq.] * * * [H]e had the right to receive an annuity upon retirement, and to receive a return of the amount withheld from his salary, with interest, upon separation from the service, or death. These rights were secured in consideration of contributions made from his salary, and at least to the extent of such contributions made, they could not be taken from him under the provisions of the Act, and we may not assume that Congress, if it could, would change the law so as to deprive him of the substantial rights acquired thereunder." 144 F.2d at page 290.

We conclude that the $375.28 was part of the taxpayer's salary in 1949 and was properly included in his gross income.

The decision of the Tax Court will be affirmed.