RICHARD R. SIBLA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2864–76.    Filed June 27, 1977.

Richard R. Sibla, pro se.
*Alan R. Herson* and *Patrick J. Dowling,* for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1973 in the amount of $1,240.

Each party has made certain concessions with respect to the issues raised by the pleadings. There remain for decision the following:

(1) Whether petitioner in computing his income subject to tax is entitled to exclude or deduct amounts withheld from his salary for contributions to the Los Angeles Firemen's Pension Fund;

(2) Whether petitioner is entitled to a deduction of $12,983 from his adjusted gross income on the basis that the value of the United States dollar has declined with respect to gold and silver;

(3) Whether petitioner, a fireman employed by the Los Angeles Fire Department, is entitled to deduct either as a business or miscellaneous expense the $366 which he was required to pay at the rate of $3 for each 24-hour working shift into the organized mess at his post of duty;

(4) Whether petitioner's itemized deductions for real estate taxes, contributions, and court appearance were properly disallowed by respondent to the extent of $62, $81, and $17, respectively, and whether petitioner's deductions for rental expenses for building supplies, utilities, advertising and legal, and licenses were properly disallowed by respondent to the extent of $81, $24, $115, and $45, respectively; and

(5) Whether petitioner is entitled to a dependency exemption for his 21-year-old son.[1]

### FINDINGS OF FACT

The parties stipulated only the facts with respect to petitioner's residence and the filing of his tax return and amended tax return for the year here in issue. These facts are found accordingly.

---

[1] This issue was raised by respondent by amendment to answer pursuant to his motion at the trial to amend his answer to conform to the proof.

Petitioner, who resided in Woodland Hills, Calif., at the time of the filing of his petition in this case, filed a joint Federal income tax return with his wife, Dora G. Sibla, for the calendar year 1973 with the Fresno Service Center and on August 5, 1974, filed a joint amended Federal income tax return for 1973.

During 1973 and for 23 years prior thereto, petitioner was employed as a fireman by the Los Angeles City Fire Department. Petitioner also owned an apartment building which he operated as a rental business. In 1973, petitioner owned two automobiles and a truck which was used solely in connection with his business of renting apartments.

Under the provisions of the charter of the City of Los Angeles (the charter), petitioner was required to be a member of the Firemen's Pension System. Under the provisions of that charter, deductions were made from the salaries of firemen and deposited into the pension fund to defray in part the cost of pensions to which members would become entitled. For the year 1973, a total amount of $1,327.52 was deducted from petitioner's salary and paid into the Firemen's Pension Fund. The deductions for the pension fund are mandatory and are not returned to a member of the pension system other than through pension system payments. Under the charter provisions, any member of the pension plan who has 20 years or more of service shall be retired upon the filing of his written application therefor or, under certain circumstances involuntarily retired by order of the board of the fire department. Upon retirement, either at his own request or otherwise by the board, a member of the pension system with 20 or more years of service but less than 25 years receives a monthly pension payment for life equal to 2 percent of a pension base for each year of service. For 25 years of service, a member of the system upon retirement receives 55 percent of the pension base, and for years of service in excess of 25, an additional 3 percent per year not to exceed a maximum of 70 percent. The pension base is computed on the basis of the salary received by the fireman. The pension system also provides for disability retirement with less than 20 years of service, for survivor annuities to the widow, minor or dependent children, or dependent parents of a deceased fireman whether or not he had retired prior to his death.

The charter also contained with respect to pensions of firemen a provision that—

Each System Member shall be deemed to consent and agree to each deduction as provided herein, and the payment of each payroll check to such System Member shall be a full and complete discharge and acquittance of all claims and demands whatsoever for the services rendered by such System Member during the period covered by each such payroll check, except such claims as such System Member may have to the benefits provided by this Article, and no System Member, former System Member or Retired Member ever shall be entitled, for any cause or reason whatsoever, to be paid any of the moneys which shall be deducted from his salary as hereinabove provided.

During 1973, petitioner's adjusted gross income as reported on his original return was $21,692. Petitioner, on his amended return, reported $8,709 as adjusted gross income with the following explanation:

5/6 of adjusted gross income (for months Jan to Oct inclusive) in Pseudo dollars P $21692 equals P $18077 times 38 equals 686926 divided by 95.48 (monthy [sic] average Jan to Oct of Daily London Gold Price) equals 7194 in Statutory dollars (S$). 1/6 of adjusted gross income (for months Nov & Dec) in Pseudo dollars P$21692 equal P$3615 times 42.22 equal 152625 divided by 100.75 (Nov & Dec monthly average of Daily London Gold Price) equal S$1514 in Statutory Dollars. S$7194 + S$1514 = S$8709 in Statutory Dollars
* * *

Petitioner's son, Blake, was 21 years old during 1973. Blake was not living with petitioner during 1973 and was not a student. During 1973, Blake was employed in a gasoline station but also occasionally did work for petitioner in connection with petitioner's rental business. Petitioner during 1973 paid Blake for the work he did in connection with petitioner's apartment rental business. Petitioner deducted these payments in computing his net income from the apartment rental business. Blake paid all of his normal support out of his own earnings and petitioner furnished him with no support during the year 1973.

The rules and regulations of the Board of Fire Commissioners of the City of Los Angeles established under the Los Angeles City Charter provide that all facilities of the fire department that are provided for the storage, preparation, cooking, and serving of food or drink shall be utilized equitably for the benefit of all members assigned at each of the fire stations or on each platoon. The regulations further

provide that there shall be maintained an organized, nonexclusionary mess and that it is the department policy that all members participate in the organized mess unless specifically excluded therefrom. Each fireman was required to pay $3 for participation in the mess for each day he was on duty, and under this requirement petitioner in 1973 was required to, and did, pay a total of $366. Petitioner's duty days consisted of 24 hours each. Under the department regulations, each fireman was required to pay the $3 a day for his participation in the mess even if he brought his own lunch or for some reason did not eat the meals prepared in the mess. Each fireman was required to pay the same amount to the mess whether or not he ate the meals prepared in the mess and irrespective of the amount he ate. At petitioner's station, generally, if petitioner were out on department business, such as fighting a fire, all of the firemen at his station were out. Therefore, if the firemen were away at regular mealtime, the meal in the mess would be served upon the return of the firemen from their firefighting work. As a general rule, petitioner did in fact eat most of his meals in the mess on the days he was on duty. Since on his duty days he was required to be at his post of duty when not called out in connection with department business, petitioner would be required even if he brought his own lunch to eat it in the mess facilities when other firemen were eating the lunch prepared in the mess.

The following schedule shows the deductions claimed by petitioner for itemized deductions and rental expenses on his income tax return as filed, the amounts of the claimed deductions disallowed by respondent, and the amounts still in controversy after concessions made by the parties:

| Itemized deductions | Per return | Disallowed by respondent | Still in controversy |
|---|---|---|---|
| Medical insurance | $150 | $150 | 0 |
| Taxes: | | | |
|    Real estate | 926 | 62 | $62 |
|    Other | 855 | 245 | 33 |
| Interest | 2,827 | 493 | 0 |
| Contributions | 369 | 81 | 81 |
| Miscellaneous deductions: | | | |
|    Other | 764 | 413 | [1]383 |

[1] This amount includes $366 payment to the Firemen's Mess and $17 automobile expense for court appearances.

|  | Per return | Disallowed by respondent | Still in controversy |
|---|---|---|---|
| *Rental expenses* | | | |
| Hardware | 348 | (2) | 0 |
| Interest | 6,408 | 2,012 | 0 |
| Office in home | 300 | 300 | 0 |
| Building supplies | 375 | 81 | 81 |
| Taxes | 3,655 | 1 | 0 |
| Advertising and legal | 249 | 115 | 115 |
| License | 62 | 62 | 45 |
| Salaries | 2,305 | 1,376 | 0 |
| Office | 34 | 8 | 0 |
| Auto | 516 | 215 | 0 |
| Utilities | 910 | 24 | 24 |

Respondent explained his disallowance of a portion of petitioner's itemized deductions and rental expense deductions on the basis that petitioner had not established that the amounts disallowed represented allowable deductions or were expended for the purpose designated. Petitioner in his petition alleged that he was entitled to an overpayment of tax because, in computing the tax on his return, he had not deducted the $1,327.52 withheld from his salary for payment to the Firemen's Pension Fund and respondent by amendment to answer alleged that petitioner was not entitled to the dependency exemption claimed on his return for his son Blake.

### OPINION

Petitioner argues that since the amounts withheld from his salary for payment into the Los Angeles Firemen's Pension Fund were not included as part of his salary as reported to him on his Form W-2 furnished by the City of Los Angeles until after he had completed 20 years of service with the fire department, he should be entitled for the year here in issue to deduct the amount withheld even though that amount was included in his salary as reported on his Form W-2.[2]

Respondent takes the position that petitioner received an economic benefit in 1973 from the increase in his annuity

---

[2] This was petitioner's sole contention, even though at the trial he was informed by the Court that what had been done in prior years would not govern the proper manner in which the withholding from his salary for payment into the pension fund should be handled for the year here in issue. We, however, have considered the legal issue of whether petitioner's payment into the Firemen's Pension Fund for the year here in issue should be excluded or deducted from his stated salary.

rights at least to the extent of the amount withheld. Respondent points out that petitioner's retirement benefits, which vested at 20 years of service, increased with each year of service. Respondent argues that the economic benefits received by petitioner from the pension system required the inclusion of the withheld amounts in his income.

In our view, it is clear that since petitioner's retirement allowance was increased by each year of service, payment into the retirement fund, though compulsory, did result in a direct benefit to him by increasing the pension to which he was entitled if he chose to retire or to which his widow or other qualified dependent would become entitled in case of his death. Petitioner, by accepting a position with the Los Angeles Fire Department and remaining in its employ, is deemed to have consented and agreed to the deduction from his compensation.

In the case of *Feistman v. Commissioner*, 63 T.C. 129, 133 (1974), we held that amounts withheld by the City of Los Angeles from the pay of a probation officer and a teacher were not deductible in computing their taxable income. In so holding, we relied on the holdings with respect to deductibility of contributions of Federal employees to the Federal Employee Retirement System. However, in the *Feistman* case, the retirement systems under which the taxpayers were covered provided that the participant was entitled to a refund of his contributions upon termination of his employment for reasons other than death or retirement. There is no such provision in the Firemen's Retirement System. In *Megibow v. Commissioner*, 21 T.C. 197 (1953), affd. 218 F.2d 687 (3d Cir. 1955), we concluded that the withholdings from a Federal employee's salary for contributions to the Civil Service Retirement System were a part of his salary and that there was no provision of law permitting a deduction of the amounts withheld. In that case, we pointed out that the employee was deemed by law to have consented and agreed to the deductions and that when his salary, minus those deductions, was paid to him, all claims he had for services rendered, except the benefits to which the Civil Service Retirement System entitled him, were fully discharged.

In *Miller v. Commissioner,* 144 F.2d 287 (4th Cir. 1944), affg. 2 T.C. 267 (1943), the court stated:

The basic salary of Malcolm D. Miller (hereinafter called the employee) for the year 1940 was $2700. This is the amount which was fixed by law to compensate him for his services as a civil service employee for that year. Of this amount he received $2,605.44 in cash. $94.56 of his salary, under the law, by his consent, was applied toward the purchase of an annuity, provided by law for his benefit.

* * * The effect of his agreement is the same as if he had received his entire salary in cash, and then sent 3½ per centum thereof to the Civil Service Commission for the purchase of the annuity provided by law.

[2] But even if it should be considered that the employee did not receive the full amount of $2700 and paid $94.56 therefrom to purchase an annuity and secure the other protection afforded by the Act, he, under any view of the transaction, as a result thereof, received additional compensation in the form of economic benefits under the Retirement Act. These benefits take the place of the part of the taxpayer's salary which was withheld, and, in any event, had an equal or greater value than the sum withheld and constitute income just as if the taxpayer had received his entire salary in cash. * * * The decisions in cases where an employer has paid premiums on life insurance policies issued for the benefit of an employee are in point. In such cases it is held that the amount paid as premiums is presumed to be additional compensation for the employee's services, and that it constitutes income to the employee on the theory that he has received a benefit in the form of insurance protection as a substitute for the cash payment. See Yuengling v. Commissioner, 3 Cir., 69 F.2d 971; Canady v. Guitteau, 6 Cir., 86 F.2d 303; Commissioner v. Bonwit, 2 Cir., 87 F.2d 764, certiorari denied 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536; Adams v. Commissioner, 18 B.T.A. 381; Danforth v. Commissioner, 18 B.T.A. 1221; Deupree v. Commissioner, 1 T.C. 113, cf. Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439. And it has been held that this is true even though the employee does not have the option to take in cash the amount paid as premiums. Brodie v. Commissioner, 1 T.C. 275.

More recent cases involving the Federal Retirement System have likewise held the amounts withheld to be part of the taxpayer's salary and not to be deductible. *Cohen v. Commissioner,* 63 T.C. 267 (1974), affd. per curiam 543 F.2d 725 (9th Cir. 1976); *Hogan v. United States,* 513 F.2d 170 (6th Cir. 1975). In the year here involved, petitioner had a vested right in the retirement funds to the extent that he could retire at any time and receive the retirement benefits. If he left the employ of the fire department for any reason, his retirement benefits would begin. In other words, he had vested rights in the fund. As pointed out in *Hogan v. United States,* 513 F.2d at 174: "Present vesting of a right, even if its enjoyment is

postponed to the happening of a future event, is an important aspect of gross income for income tax purposes. Renton K. Brodie, 1 T.C. 275 (1942). *See also* United States v. Basye, 410 U.S. 441, 452, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973)."

Petitioner could not withdraw the funds he had in the retirement system in cash, and if he died while on duty leaving no spouse or other qualified beneficiary, his estate would not receive his interest in the fund. In this respect, the facts here differ from those in the cases involving the Federal Retirement System and *Feistman v. Commissioner, supra,* involving employees under other Los Angeles, Calif., retirement systems. However, in our view, petitioner received benefits at least equal to the amount withheld from his salary and, therefore, even though the enjoyment of these benefits was postponed, the right to the benefits constitutes gross income. Certainly premiums paid by an employer for life insurance for an employee where there is no cash surrender value or the amount of the premium is in excess of the increase in the cash surrender value result in providing currently no benefit for the employee other than protection. However, it has been consistently held that each payment of premium is includable in the income of the employee because of the economic benefit conferred on him. *Frost v. Commissioner,* 52 T.C. 89, 96 (1969), and cases there cited. Cf. *Clay v. Commissioner,* 46 T.C. 505 (1966), with respect to payment of premiums for term life insurance, particularly the statement at page 510 that "Respondent asserts and petitioner does not contest that the premiums here paid * * * would be fully taxable to petitioner were it not for section 1.61–2(d)(2), Income Tax Regs., *supra.*" See also sec. 79, I.R.C. 1954.[3]

Petitioner has pointed to no provision of statute that would entitle him to deduct the amount of these contributions to the Firemen's Pension System from his gross income. In our view, these payments are includable in petitioner's income and are not deductible.

We have in numerous cases held that a taxpayer is not entitled to a deduction nor any other adjustment to his gross income because of the fact that the value of a dollar may have declined in relationship to silver or gold. See *Cupp v.*

---

[3] All statutory references are to the Internal Revenue Code of 1954, as amended.

*Commissioner,* 65 T.C. 68 (1975). See also *Hartman v. Switzer,* 376 F.Supp. 486, 490 (W.D. Pa. 1974), in which the court termed an argument similar to petitioner's argument here as "clearly spurious." We, therefore, hold that petitioner is not entitled to any adjustment in the gross income he received because of any decline in value of the dollar with respect to gold or silver.

The facts here show that petitioner's son, Blake, was 21 years old in 1973, that he was not a student, and that he did not live with petitioner. Even though petitioner made some payments to Blake for services rendered, he did not make any payments toward his support.

Section 151(e) states that a taxpayer is entitled to a dependency exemption for each dependent as defined in section 152 whose gross income in the calendar year of the taxpayer is less than $750 or who is a child of the taxpayer who has not attained the age of 19 at the close of the taxable year or is a student. Section 152(a) includes as a dependent a son over half of whose support for the calendar year involved was received from the taxpayer. The record here shows that Blake did not receive over half of his support for 1973 from petitioner. The record also shows that Blake was over 19 and was not a student. We, therefore, hold that petitioner is not entitled to a dependency exemption for Blake.

In *Cooper v. Commissioner,* 67 T.C. 870 (1977), we held that a Los Angeles fireman, who was required to make payments into the firemen's mess under the same regulations that govern the payments made by petitioner in this case, was entitled to deduct such payments as a business expense. At the trial of this case, counsel for respondent stated that respondent did not contend that there was any factual distinction between the instant case and the *Cooper* case. However, on brief respondent argues that the cases are factually distinguishable in that in the *Cooper* case the evidence showed that the taxpayer objected to paying the assessed amount but relented and paid it when he was threatened with disciplinary action, whereas petitioner in this case made no showing that he protested the payment, and the facts in the *Cooper* case showed that at times the taxpayer was away from the station on fire department business during the mess period and the facts in the instant case show that

generally the taxpayer was present at the fire department during the mess periods and ate his meals there. In our view, these factual distinctions are not a basis for distinguishing our holding in the *Cooper* case from this case. In both cases the firemen were required to make the payments and required to eat in the mess when they were at the station house. In our view, the holding of the majority opinion as well as the concurring opinion in the *Cooper* case is not predicated on the fact that the taxpayer protested the payments or the fact that he missed some meals but rather on the nature of the requirement for the payment. The dissenting opinion did contain a statement that to the extent the taxpayer was required to and did pay for meals he did not eat, the cost would be an ordinary and necessary expense of the business of being a fireman, but this was not the holding in the *Cooper* case. We find the instant case not to be distinguishable from the *Cooper* case and sustain petitioner's right to the deduction for $366 on the basis of the *Cooper* case.

Of the amounts of disallowance of itemized deductions and rental expenses that still remain in issue, after concessions by each party and in effect an audit of petitioner's return during trial, we hold for respondent as to all items except the $11 auto license fee on his truck on the grounds that petitioner failed to substantiate that the claimed amounts were both paid and not deducted elsewhere on his return. Petitioner deducted the $11 registration fee which he paid for each of his two automobiles and on his truck as "Taxes * * * Other." The $33 of this item, which is still in dispute, consists of these three $11 amounts. Petitioner also deducted the $11 paid for his truck license as part of his rental expense deduction for "License" of $62. The $45 of this item still in dispute includes the $11 paid by petitioner for his truck license. An automobile registration fee not related to value of the automobile is not a tax within the definition of section 1.164–3(c)(1)–(3), Income Tax Regs. A flat charge for all vehicles does not meet the requirement of the regulations for an ad valorem tax. For that reason, clearly the $11 paid for the license fee for each of the two cars is not deductible. However, the record reasonably shows that the truck was used only for business purposes by petitioner in connection with his rental business. Therefore, in our view, any payment in connection with the truck would

be properly deductible as a business expense. The $11 registration fee paid for the truck is deductible by petitioner not as a tax but as a cost of his rental business. We, therefore, hold that no amount of the $33 claimed tax deduction still in dispute is proper but that petitioner is entitled to deduct $11 of the $45 claimed to be deductible as "License" as an expense of his rental business.

*Decision will be entered under Rule 155.*