RICHARD M. SIMS, JR., AND DALE A. SIMS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3107–76.    Filed August 29, 1979.

*Richard M. Sims, Jr.*, pro se.
*Peter D. Bakutes* and *James M. Kamman*, for the respondent.

OPINION

CHABOT, *Judge:* * Respondent determined deficiencies in petitioners' Federal individual income tax for the calendar years[1] 1973 and 1974 in the amounts of $1,451 and $1,570, respectively.

The issue to be decided is whether petitioners are taxable on amounts withheld from the husband-petitioner's salary as contributions to California's Judges' Retirement Fund where the retirement benefits payable under California's Judges' Retirement Law[2] are not likely to be increased because of these contributions.[3]

All of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference.

At the time the petition in this case was filed, Richard M. Sims, Jr., and Dale A. Sims, husband and wife, were residents of Marin County, Calif. Since Dale A. Sims is a party herein solely by virtue of having filed joint returns with her husband, Richard M. Sims will hereinafter be referred to as the petitioner.

Petitioner was continuously employed by Marin County, Calif., from September 15, 1946, through December 22, 1964, and was continuously employed by the State of California from December 23, 1964, through at least December 31, 1974, as follows:

---

*By order dated Apr. 4, 1978, the Chief Judge reassigned this case from Judge Leo H. Irwin to Judge Herbert L. Chabot for disposition.

[1] Petitioners compute taxable income on a calendar year basis. Initially, the husband-petitioner received his salary for a month at the start of the following month and petitioners reported that salary when received. When the husband-petitioner began to receive his salary for a month at the end of that month, petitioners began to report the salary on the basis of a Dec. 1—Nov. 30 period, while remaining on a calendar-year basis for other income items and, apparently, for deduction items (other than the items in dispute in the instant case). Respondent has raised no issue in the instant case regarding this limited use of a fiscal year. The parties have agreed that respondent's failure to raise an issue in the instant case regarding this matter (and to move for an increased deficiency) does not constitute an acquiescence or approval by respondent of this limited use of a fiscal year, and does not bar or restrict respondent from raising an issue in any future taxable year regarding the propriety of this limited use of a fiscal year.

[2] Ch. 11, tit. 8, Cal. Gov't Code secs. 75000–75110 (West 1976).

[3] The notice of deficiency also proposed to increase petitioners' 1974 taxable income by $45 "to correct a math error." Petitioners specifically noted on petition that they did not dispute this adjustment and conceded as a deficiency the tax thereon. Respondent, on answer, averred that nevertheless the entire asserted deficiency is in dispute. Since the record does not include any clarification of this statement in respondent's answer, this matter is to be resolved in proceedings under Rule 155.

(a) Deputy District Attorney, Assistant District Attorney, and District Attorney of Marin County from September 15, 1946, through January 4, 1953;

(b) Judge of the Municipal Court, Marin County, from January 5, 1953, through September 15, 1960;

(c) Judge of the Superior Court, Marin County, from September 16, 1960, through December 22, 1964; and

(d) Associate Justice of the Court of Appeal, California, from December 23, 1964, through at least December 31, 1974.

As a result of his service as a judge and his election to treat his September 15, 1946, through January 4, 1953, service as though it were service as a judge, petitioner has credit under the Judges' Retirement Law for the entire period from September 15, 1946, onward. Petitioner was born on September 20, 1910. On September 20, 1970, petitioner satisfied the age (60) and service (20 years) requirements making him eligible to retire immediately (Cal. Gov't Code sec. 75025(h)), with a lifetime annuity of 75 percent of the current salary of the office (Cal. Gov't Code secs. 75075 and 75076(a) and (c)).

If a judge dies after becoming eligible for retirement, the judge's surviving spouse is entitled to an annuity of one-half of the amount that would have been payable to the judge as a retired judge, until the surviving spouse's death or remarriage (Cal. Gov't Code secs. 75077, 75104.4). If a judge dies before retirement and does not leave a surviving spouse entitled to an annuity, then the judge's designated beneficiary or estate is entitled to a lump-sum payment of up to one-half of the judge's annual salary (Cal. Gov't Code sec. 75104.5). If a judge dies, resigns, or ceases to be a judge before retirement, then the judge or the judge's designated beneficiary is entitled to receive the judge's accumulated contributions to the Judges' Retirement Fund (Cal. Gov't. Code sec. 75104). Various alternative options, including a guaranteed return of not less than the judge's accumulated contributions, are available to a judge who continues to serve as such after age 70 and, under certain circumstances, to judges who retire before that age (Cal. Gov't Code secs. 75070, 75071, 75075). A judge who becomes disabled is entitled to receive a disability allowance of one-half of the current salary of the office (Cal. Gov't Code sec. 75060). A judge who is removed from office by the California Supreme Court must be refunded his or her accumulated contributions (Cal.

Gov't Code sec. 75033.1). A retired judge who is assigned to sit as a judge is to receive 92 percent of the current salary of the office (Cal. Gov't Code sec. 68543.5). If a retired judge receives compensation from holding a public office, the retirement allowance is reduced by the amount of the compensation (Cal. Gov't Code sec. 75080). If a retired judge otherwise engages in the practice of law "or other gainful occupation" before age 70, the retirement allowance ceases permanently (Cal. Gov't Code sec. 75080).

Retirement benefits under the Judges' Retirement Law are funded in part by contributions from the State government (Cal. Gov't Code secs. 75101, 75107, 75108). In addition, the State or local government employer must withhold 8 percent of the monthly salary of each judge and pay that amount to the Judges' Retirement Fund (Cal. Gov't Code secs. 75102 and 75103).

As of October 1, 1970, petitioner's contributions to the Judges' Retirement Fund totaled $23,397.18.

During the period December 1, 1972, through November 30, 1973, $3,523.14 was withheld from petitioner's salary and paid to the Judges' Retirement Fund; during the period December 1, 1973, through November 30, 1974, $3,691.51 was similarly treated (see n. 1 *supra*).

Petitioners offer the following alternative reasons for their not being taxed on the contributions to the Judges' Retirement Fund withheld from petitioner's salary:[4]

(1) The contributions are not includable in petitioners' gross income.

(2) Inclusion of the contributions would be unconstitutional under the Fifth Amendment.

(3) If includable in income, the contributions are deductible under—

(a) section 162[5] or 212 as ordinary and necessary expenses for the production of income from petitioner's public office;

(b) section 164 as State taxes; or

(c) section 170 as gifts to a State for a public purpose.

---

[4]On their joint Federal individual income tax returns for 1973 and 1974, petitioners included the amounts of petitioner's contributions as "Wages, salaries, tips, and other employee compensation" and then deducted these amounts as "Miscellaneous deductions."

[5]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect for the taxable years in issue.

We consider these issues seriatim.

## I. *Gross Income*

Petitioners maintain that the amounts of petitioner's contri-- butions to the Judges' Retirement Fund are not includable in their gross income because they received no economic benefit from the contributions and did not consent to the making of the contributions. Respondent argues that petitioner received economic benefit from the contributions and consented to the making of the contributions.

We agree with respondent.

Gross income includes compensation for services.[6] Petitioner's employer (the State of California) established the level of salary to be paid as compensation for petitioner's services as Associate Justice of the Court of Appeal (Cal. Gov't Code secs. 68201(b), 68203). The employer also established a pension plan with a package of benefits. In addition to establishing certain length-of-service and age requirements for certain of the benefits, the employer required petitioner to contribute to the plan 8 percent of what was designated as petitioner's salary.

Since many parts of the benefit package are, in effect, alternatives, many of the benefits will never be drawn upon by any individual judge. However, each judge who survives past the point where a particular alternative becomes unavailable or unrealistic as to him or her has nevertheless had the benefit of the availability of that alternative up to that point. No specific contribution, or year's worth of contributions, can fairly be said to have purchased any particular benefit. All the contributions, together with all the service, purchased all the salary and all the Judges' Retirement Law benefits.

As, we view the effect of the arrangement mandated by the Judges' Retirement Law, we conclude that there are economic benefits and there is implied consent sufficient to require inclusion in petitioners' gross income of the amounts of petitioner's contributions to the Judges' Retirement Fund. *Cohen v. Commissioner*, 543 F.2d 725 (9th Cir. 1976), affg. 63 T.C. 267 (1974); *Hogan v. United States*, 513 F.2d 170 (6th Cir. 1975);

---

[6] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

*Megibow v. Commissioner*, 218 F.2d 687 (3d Cir. 1955), affg. 21 T.C. 197 (1953); *Miller v. Commissioner*, 144 F.2d 287 (4th Cir. 1944), affg. 2 T.C. 267 (1943); *Feistman v. Commissioner*, 63 T.C. 129 (1974).

Petitioners concede the authority of the foregoing cases, but ask us to focus on whether petitioner's 1973 and 1974 contributions bought for them any additional benefits. They contend that the contributions did not buy them any additional benefits, that this element distinguishes the instant case from the authorities cited above, and that this element is sufficient to require us to decide that the contributions are excludable from their income.

Firstly, we decline to view the matter so narrowly. As we see it, petitioner's 1973 and 1974 contributions were made in partial satisfaction of petitioner's continuing obligation to make payments to the Judges' Retirement Fund in return for payments to be made by the Fund to him, his surviving spouse, or his otherwise designated beneficiary. Each such payment "purchased" an undivided part of the package of benefits, just as petitioner's contributions for earlier years "purchased" undivided parts of the package of benefits.

Secondly, even if we were to view the matter narrowly, as petitioners urge, we must conclude that we have not been shown that petitioner's 1973 and 1974 contributions "purchased" anything less than had been "purchased" in *Cohen* and its predecessors. In the *Cohen* case and its predecessors, the taxpayers' contributions for the years there in issue increased the minimum refund amount required to be paid to the taxpayer, his surviving spouse, or his estate under certain circumstances. Similarly, petitioner's 1973 and 1974 contributions increased the minimum refund amount required to be paid to him, his surviving spouse, or his estate under certain circumstances. In the instant case, and in the *Cohen* case and its predecessors, there was a substantial likelihood that the employee, his surviving spouse, or his estate would not receive the minimum refund amount as a refund. This substantial likelihood of not receiving the minimum refund amount, or, to put it conversely, the slight chance that the minimum refund provisions would become operable, arises from the substantial likelihood that retirement annuities of the taxpayers (and their surviving spouses) in the *Cohen* case and its predecessors—as well as the retirement annuity of petitioner and his surviving spouse—would exceed the minimum refund

amount. Petitioners have not shown that petitioner's 1973 and 1974 contributions were less likely to be received as a refund than were the taxpayers' contributions in the *Cohen* case and its predecessors, and for that reason taking petitioners' narrow approach to the matter adds nothing to petitioners' position. See *Heard v. Commissioner*, 326 F.2d 962, 964 (8th Cir. 1964), affg. 40 T.C. 7, 8 (1963); *Boyer v. Commissioner*, 69 T.C. 521, 535 (1977), on appeal (7th Cir., July 7, 1978). See *Sibla v. Commissioner*, 68 T.C. 422, 428 (1977), affd. 611 F.2d 1260 (9th Cir. 1980), where there was no right to receive back the amount of the employee's contributions.

Petitioners insist that their rights under the Judges' Retirement Law became "paid for" and "vested" when petitioner attained age 60, having already received credit for more than 20 years of service. They would distinguish the instant case from the *Cohen* case and its predecessors because of this difference. We have already concluded that, under the Judges' Retirement Law, petitioners' rights were not fully "paid for" so long as petitioner remained in active service. Consequently, this asserted basis for distinguishing the cited cases fails.

Petitioners argue that the *Cohen* case and its predecessors are distinguishable because in California a retired judge who is assigned to sit in a court receives only 92 percent of the current judicial salary. Petitioners contend that the salary of a judge eligible for retirement should be compared, not with that of a judge who is ineligible for retirement, but with that of a judge who has retired and has been assigned to sit in a court.

Petitioners conclude that this comparison shows that "there is a recognition by the State that in certain cases the mandatory contribution is not part of the judge's compensation." California has chosen to finance its judges' retirement benefits by requiring contributions from nonretired judges and by paying lower salaries to retired judges assigned to sit in its courts. We take California's system of dealing with its employees as we find it and will not presume to substitute our judgment for that of the State on this point. The mere fact that California could have chosen a different method of financing its judges' retirement benefits, a different method that might have reduced petitioners' Federal individual income tax obligations (see n. 7 *infra*), is beside the point. Many employees provide noncontributory retirement plans, but the tax laws do not treat contributory

plans in all respects like noncontributory plans. We see no reason to treat petitioners as though petitioner's arrangement was noncontributory, merely because California might have established a noncontributory system.

We hold that the amounts of petitioner's contributions here at issue are includable in petitioners' gross income for the years before us.

———————

The parties have not referred to section 414(h),[7] enacted as part of the Employee Retirement Income Security Act of 1974 (hereinafter sometimes referred to as ERISA), Pub. L. 93–406, 88 Stat. 829. See H. Rept. 93–1280 (Conf. Rept.) p. 279, 1974–3 C.B. 415, 440; H. Rept. 93–807, to accompany H.R. 12855, p. 145, 1974–3 C.B. (Supp.) 236, 380, and so we do not pass on its applicability to the situation before us. We note, however, that our holding is consistent with what section 414(h) would appear to require if that provision were held to apply to the situation before us.

## II. *Constitutionality*

Petitioners argue that inclusion in income of the amount of petitioner's contributions violates the equal protection of the laws concepts (applicable to the States under section 1 of the 14th Amendment[8]) as they are embodied in the Fifth Amendment[9] to the United States Constitution. *Johnson v. Robison,* 415

———————

[7]SEC. 414. DEFINITIONS AND SPECIAL RULES.

(h) TAX TREATMENT OF CERTAIN CONTRIBUTIONS.—

(1) IN GENERAL.—Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title [i.e., the Internal Revenue Code of 1954], any amount contributed—

(A) to an employees' trust described in section 401(a), or

(B) under a plan described in section 403(a) or 405(a), shall not be treated as having been made by the employer if it is designated as an employee contribution.

(2) DESIGNATION BY UNITS OF GOVERNMENT.—For purposes of paragraph (1), in the case of any plan established by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing, where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions.

[8]"Sec. 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[9]"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for

U.S. 361, 364 n. 4 (1974); *Bolling v. Sharpe,* 347 U.S. 497 (1954). Respondent disagrees.

We agree with respondent.

Petitioners concede that the equal-protection-due-process argument was rejected in *Hogan v. United States,* 513 F.2d at 173, 175, and do not dispute the correctness of that determination. They maintain, however, that *Hogan* is distinguishable because, in the instant case, "the annuity is already purchased."

The short answer is that the annuity promised by the California Judges' Retirement Law has not been completely purchased by petitioner and will not be until petitioner retires. Petitioner's primary benefit is in the form of a joint and survivor annuity and does not depend at all (except with respect to rights of refunds of contributions) on the balance in petitioner's account. The Judges' Retirement Law may be viewed as an agreement to pay, in addition to salary, an annuity and various other benefits under certain circumstances, in exchange for petitioner's service and his contributions to the Judges' Retirement Fund. Petitioner had not yet completed his part of the bargain during the years before the Court. His obligations to make payments continued during these years. Consequently, the only claimed distinction between this case and *Hogan v. United States, supra,* simply does not exist. See also *Steiner v. Commissioner,* 55 T.C. 1018 (1971), affd. without opinion (D.C. Cir. 1972).

Since petitioners have not further developed their constitutional argument, it would be inappropriate for this Court to speculate as to other possible grounds of attack. See *Golden Rule Church Association v. Commissioner,* 41 T.C. 719, 730 (1964), and cases cited therein. For a recent analysis of the right of the Congress to draw constitutionally permissible lines in a related area, see *Guest v. Commissioner,* 72 T.C. 768 (1979).

We hold that inclusion of petitioner's contributions in petitioners' gross income does not violate petitioners' asserted constitutional rights.

---

the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

### III. *Deductibility*

A. *Ordinary and necessary expenses.*—Petitioners maintain that, if petitioner's contributions to the Judges' Retirement Fund are includable in gross income, then they are deductible "as a business expense for the production of income." Respondent disagrees.

We agree with respondent.

Petitioner's performance of his functions as a judge constituted a trade or business,[10] the ordinary and necessary expenses of which are deductible.[11] Also, the ordinary and necessary expenses for the production of income (e.g., petitioner's salary) are deductible.[12]

In accordance with our decision in *Davidson v. Commissioner*, 42 T.C. 766 (1964), we conclude that petitoner's contributions to the Judges' Retirement Fund are either capital expenditures (presumably recoverable without tax upon return of the contributions in a lump sum or under the rules of section 72 in the case of an annuity) or, if they are expenses, are not deductible because of their nature as personal expenses.[13] *Davidson* involved contributions to a tax-qualified pension and insurance plan; as is shown by *Simenstad v. United States*, 325 F. Supp. 1249 (N.D. Cal. 1971), cited by petitioners, the same considerations apply if the pension arrangement does not involve a tax-qualified plan.

Petitioners suggest an analogy to union dues, where the assessments are made for the benefit of others, citing Rev. Rul. 72–463, 1972–2 C.B. 93, and Rev. Rul. 54–190, 1954–1 C.B. 46. The

---

[10]SEC. 7701. DEFINITIONS.

(a) When used in this title [i.e., the Internal Revenue Code of 1954], where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\*     \*     \*     \*     \*     \*     \*

(26) TRADE OR BUSINESS.—The term "trade or business" includes the performance of the functions of a public office.

[11]SEC. 162 TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, \* \* \*

[12]SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

[13]SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

1972 ruling concluded that the portion of the dues used to provide death benefits is a nondeductible personal expense but that the remaining amount of the dues, used to meet only the expenses of labor union activities, is deductible. In the instant case, petitioners have not shown that any part of the contributions to the Judges' Retirement Fund was used for any purpose other than the providing of retirement or survivorship benefits under the Judges' Retirement Law. The 1954 ruling set forth respondent's position that the payments of union assessments for the support of an old-age pension fund are deductible as ordinary and necessary expenses of the union members. The ruling notes that the executive committee administering the pension fund has authority to change the benefits at will and to disbar any member from participation in the fund. The ruling states that "the member actually has no vested interest in any right to a pension, even though the assessments are paid with the expectation of participation in the fund." (1954–1 C.B. at 47.) Without reaching a conclusion as to the ruling's correctness, we note that the ruling's factual predicates are not present in the instant case, where the benefits are regulated by the Judges' Retirement Law. The cited rulings (which do not have the force of regulations, e.g., *Christian Manner International, Inc. v. Commissioner*, 71 T.C. 661, 666 (1979); *Henry C. Beck Builders, Inc. v. Commissioner*, 41 T.C. 616, 628 n. 15 (1964)) do not assist petitioners' claim in the instant case.

We hold that petitioner's contributions are not deductible as business expenses or as expenses for the production of income.

B. *Taxes.*—Petitioners maintain that, if petitioner's contributions to the Judges' Retirement Fund are includable in gross income and are not deductible as ordinary and necessary expenses, then they are deductible as taxes. Respondent disputes this, asserting that the contributions are not one of the kinds of deductible taxes enumerated in section 164, that they are not taxes paid in carrying on a trade or business or a section 212 activity, and that they are not taxes.

We agree with respondent that the contributions are not taxes.

Certain types of taxes are deductible even though they are personal expenses or are required to be capitalized.[14]

---

[14]SEC. 164. TAXES.

(a) GENERAL RULE.—Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

Not every exaction by the sovereign is a tax. E.g., *Cox v. Commissioner*, 41 T.C. 161 (1963) (turnpike tolls). In the instant case, although the sovereign (i.e., the State of California) is acting by statute, it seems clear that it is acting more as employer than as sovereign. The amounts that petitioner is required by statute to pay to the Judges' Retirement Fund appear to be no different from employee contributions to a defined benefit pension plan of a private employer, where the contributions are required as a condition of employment. See *Davidson v. Commissioner*, 42 T.C. at 769, citing favorably Rev. Rul. 58–141, 1958–1 C.B. 101; the material set forth at n. 7 *supra*; subsecs. (a)(1) and (c)(2)(C) of sec. 203, ERISA, 88 Stat. 854, 857, and subsecs. (a)(1) and (c)(2)(C) of sec. 411, regarding requirements applicable to nongovernmental pension plans. See also *Heard v. Commissioner*, 326 F.2d at 965–966, 40 T.C. at 11–12.

Petitioners concede that an amount paid "as the price of a future retirement annuity" is not a tax, even though the obligation to pay is imposed by the Judges' Retirement Law, but argue that "once the retirement annuity has been purchased, the levy is no more than a tax on the employee to support the payment of benefits to those who have qualified by retirement or survivorship." Petitioners are in essence repeating the same argument that we have rejected, *supra*. The annuity has not been "purchased" until petitioner has met all the requirements, including the requirement of making his mandatory contributions so long as he remains a judge.

Petitioners also contend that *Escofil v. Commissioner*, 464 F.2d 358 (3d Cir. 1972), affg. a Memorandum Opinion of this Court,[15] stands for the conclusion that contributions to State government employee retirement funds that do not increase

---

(1) State and local, and foreign, real property taxes.

(2) State and local personal property taxes.

(3) State and local, and foreign, income, war profits, and excess profits taxes.

(4) State and local general sales taxes.

(5) State and local taxes on the sale of gasoline, diesel fuel, and other motor fuels.

In addition, there shall be allowed as a deduction State and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in carrying on a trade or business or an activity described in section 212 (relating to expenses for production of income).

The subsequent amendment of this provision (by sec. 11(a) of the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2777, repealing paragraph (5)) does not affect the instant case.

[15] T.C. Memo. 1971–131.

retirement benefits are State income taxes. *Escofil* involved the Federal Social Security tax, which clearly is a tax and not an employment condition imposed by an employer upon its own employees. This distinction between the *Escofil* situation and that present in the instant case serves to emphasize the weakness of petitioners' argument and does not buttress their position.[16]

We hold that petitioner's contributions are not deductible as taxes.

C. *Charitable contributions.*—Petitioners maintain that, if petitioner's contributions to the Judges' Retirement Fund are includable in gross income and are not deductible as ordinary and necessary expenses or as taxes, then they are deductible as charitable contributions. Respondent maintains that petitioner's contributions are not deductible as charitable contributions because they were paid under compulsion of law.

We agree with respondent. Among the requirements for deductibility as a charitable contribution[17] are the presence of voluntariness and the absence of a quid pro quo.

Payments made under compulsion of law lack the element of voluntariness. *Perlmutter v. Commissioner*, 45 T.C. 311, 316-317 (1965). See *Bogardus v. Commissioner*, 302 U.S. 34, 41 (1937); *United States v. Transamerica Corp.*, 392 F.2d 522, 524 n. 1 (9th Cir. 1968). Petitioner's contributions to the Judges' Retirement Fund were compelled by law. The contributions were made by withholding from his salary. Apart from petitioner's choice of employment, he had no option as to the making of the contributions. We conclude that petitioner's contributions lacked the element of voluntariness necessary to support a charitable contribution deduction.

In order for a payment to an eligible donee to be deductible, the payor must be making a gift, i.e., the payor must not receive a quid pro quo. E.g., *DeJong v. Commissioner*, 309 F.2d 373 (9th

---

[16]Petitioners also rely on *Summers v. Commissioner*, T.C. Memo. 1971–11. In *Summers*, the Court followed *Davidson v. Commissioner, supra*, in concluding that employee contributions to the Michigan State Retirement Fund were not deductible. As is the case with *Escofil*, petitioners' citation of *Summers* merely emphasizes the weakness of their argument.

[17]SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

(1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.

Cir. 1962), affg. 36 T.C. 896 (1961). As we have analyzed the situation, petitioner's contributions constituted part of the consideration he furnished to his employer in exchange for a package of benefits by way of retirement annuities and payments to his surviving spouse or other beneficiaries. Consequently, there is a quid pro quo in the instant case, sufficient to disqualify petitioner's payments from treatment as deductible charitable contributions.

We hold that petitioner's contributions are not deductible as charitable contributions.

In order to resolve the dispute as to the proper treatment of the $45 "math error" (n. 3 *supra*),

*Decision will be entered under Rule 155.*