JAMES M. AND VERNA M. FIELDS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fields v. Commissioner
Docket No. 32410-83.
United States Tax Court
T.C. Memo 1987-93; 1987 Tax Ct. Memo LEXIS 89; 53 T.C.M. (CCH) 155; T.C.M. (RIA) 87093; February 17, 1987. *89 Held: Charitable contribution deductions disallowed. Held further, petitioners were negligent and disregarded rules and regulations in connection with claimed charitable contributions. Held further, damages awarded to the United States in the amount of $5,000. Frank L. Thiemonge III, for the petitioners. Keith H. Johnson, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined the following deficiencies and additions to tax for petitioners' taxable years ended December 31, 1980, and December 31, 1981: Additions to Tax
Year
Deficiency
Section 6653(a)(1) [1]
Section 6653(a)(2)
1980
$2,746
$137
1981
3,655
183
50% of interest due
on an underpayment
of $3,655 [2]
In addition, respondent has requested damages under section 6673. The *90 issues for decision are: (1) Whether petitioners are entitled to deductions for charitable contributions for the years in issue; (2) whether petitioners are liable for additions to tax under section 6653(a) for the years in issue; and (3) whether damages under section 6673 should be awarded. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners James and Verna Fields, husband and wife, resided in Jacksonville, Florida, at the time they filed their petition in this case. During the years in issue, Mrs. Fields was employed as a schoolteacher by the Duval County School Board and Mr. Fields was employed as a clerk by the Seaboard Coast Line Railroad Company. The Fields filed joint Federal income tax returns for the years 1980 and 1981. Mr. Fields was ordained as a minister of Universal Life Church, Inc. of Modesto, California (ULC) on August 3, 1979, and on December 3 of that year he formed a local organization in Jacksonville, Florida. He has never attended or taken any specialized programs, courses, or training in religion. Since being ordained he has never performed any marriages, conducted any funerals, performed any baptisms, or conducted any communions. *91 On the Board of Directors for the Jacksonville organization were Mr. and Mrs. Fields, and a friend of theirs, Lane Skinner. Mrs. Fields acted as treasurer and Mr. Skinner acted as secretary. The group met the first and third Wednesday of each month at the Fields' house and, led by Mr. Fields, discussed "problems [the members] might be having." They also recited the Lord's Prayer and read scripture from the Bible. Eight to ten people usually attended the meetings, including the Fields and their children. The only contributions to the organization were made by Mr. Fields. He contributed cash, which was put in a cigar box that was kept in the Fields' house. Although Mrs. Fields was treasurer, either Richard or Lane Skinner signed receipts for Mr. Fields' contributions to avoid the appearance of a conflict of interest. Any money spent out of the contribution fund was approved by the Board of Directors. During the years in issue, the Board of Directors authorized a monthly housing allowance for Mr. Fields in the amount of the Fields' mortgage payment and utilities, the construction of a fence around the Fields' backyard, the construction of an addition to the Fields' house, and the *92 purchase of furniture for the new addition. Mr. Fields paid for these items out of his own checking account and then reimbursed himself from the cash in the cigar box. He was the only person to handle the money in the box, and did not keep any books and records for the fund. For the years 1980 and 1981, the Fields claimed charitable contributions of $9,318 and $11,670, respectively, for payments made to ULC in Modesto. Respondent disallowed the deductions on the basis that it was not established that the contributions were made or that the requirements of section 170 were satisfied. OPINION Charitable Contributions
Deductions for charitable contributions are authorized by section 170 provided the specific statutory requirements are satisfied.[3] *93 *94 Deputy v. duPont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioners bear the burden of proving their entitlement to the deductions they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a).
To show that payment of a claimed contribution was made during the taxable year, petitioners must show that they departed with dominion and control over the alleged gift. Wedvik v. Commissioner, 87 T.C.     (filed Dec. 30, 1986); Davis v. Commissioner,81 T.C. 806, 817 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). No deduction will be allowed where some economic benefit in return for the alleged gift is expected. Sims v. Commissioner,72 T.C. 996, 1008-1009 (1979); Rusoff v. Commissioner,65 T.C. 459, 469 (1975), affd. without published opinion 556 F.2d 559 (2d Cir. 1977). Based on the record before us we conclude that the Fields retained control of and benefited personally from all of their purported contributions. Mr. Fields was the only individual to make the contributions *95 and he was the only individual who handled the funds. He kept the cash in a cigar box in his home, and did not keep records of amounts contributed to or disbursed from the fund. He used the cash only to reimburse himself for expenditures which were for his or his family's own benefit. [4] *96 See, e. g., Davis v. Commissioner,supra;Glynn v. Commissioner,76 T.C. 116, 121-122 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). The only evidence supporting a contribution to ULC in Modesto is Mr. Fields' testimony that any remaining money after payment of the home mortgage and other expenditures was sent to the parent church by Mr. Skinner. However, Mr. Skinner testified that he never handled any of the money that was contributed. Thus we have no credible evidence that any money contributed to the local organization was ever sent elsewhere. Furthermore, petitioners erroneously conclude that their organization falls within the protection of the exemption granted to ULC, and that any money received by the local organization or charter is deemed donated to the parent church. The section 501(c)(3) exemption granted to ULC, [5] is not a group exemption and does not extend to its charters or separate organizations. Davis v. Commissioner,supra,81 T.C. at 815. Consequently, petitioners must establish that their own charter or organization is a qualified organization within section 170(c). This they have not accomplished. [6] *97 No evidence has been introduced to establish that their organization was a corporation, trust, community chest fund, or foundation within the meaning of section 170(c)(2)(A), or that their church was organized exclusively for exempt purposes within the meaning of section 170(c)(2)(B). Petitioners introduced no documentary evidence establishing any formal or informal organization. Mr. Fields testified that he did not incorporate or otherwise file any documents with the State of Florida. Furthermore, no evidence, such as articles of incorporation, trust documents, or other legal governance documents, was introduced that would indicate that the purposes of petitioners' local church were limited exclusively to exempt purposes. See Wedvik v. Commissioner,supra. In addition petitioners have not proven that their contributions did not inure to their benefit or the benefit of any other private individual. Sec. 170(c)(2)(C); Wedvik v. Commissioner,supra. In fact the evidence indicates the contrary. All of the payments from the contribution fund directly benefited petitioners. *98 Moreover, no evidence whatsoever has been presented to prove that the remaining funds were used for anything other than petitioners' personal benefit. For these reasons, we conclude that the payments made by petitioners are not deductible contributions. [7]
Section 6653(a)
Respondent determined additions to tax under section 6653(a) for all years in issue. Petitioners have failed to prove that respondent's determination is incorrect. The record before us supports the conclusion that petitioners were negligent and disregarded rules and regulations in connection with the claimed charitable contribution. [8] Petitioners cannot reasonably have expected to be allowed charitable contribution deductions for amounts paid which so evidently inured to their benefit. We therefore sustain respondent's determination. Section 6673
Respondent also seeks *99 damages pursuant to section 6673 on the grounds that petitioners instituted and maintained these proceedings primarily for delay and that petitioners asserted a frivolous or groundless position. Petitioners were advised by respondent on two occasions that damages would be sought if petitioners did not establish that the funds were donated to a bona fide church or if it was established that the funds paid were used for their personal expenses, yet petitioners continued to advance their position. The maintenance of this case in the face of overwhelming contrary authority and warnings by respondent leads us to conclude that petitioners maintained their case primarily for delay. [9] For these reasons, respondent's motion for damages is hereby granted, and damages are awarded to the United States in the amount of $5,000.
Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Sec. 6653(a) includes an addition to tax equal to 50 percent of the interest due, which is applicable to taxes that the last date prescribed for payment of which is after December 31, 1981. Pub. L. 97-34, 95 Stat. 342, sec. 722(b)(1).↩
3. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction. -- (1) General Rule. -- There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary. * * * (c) Charitable Contribution Defined. -- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest fund, or foundation -- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B).↩
4. Mr. Fields testified that he only took money out of the cigar box as reimbursements for authorized expenditures. The remaining amounts, he claims, were sent to ULC in Modesto by Mr. Skinner. However, Mr. Skinner testified that he never handled the cash in the cigar box. Furthermore, Mrs. Fields testified that her husband handled the money, and that she did not even know where it was kept in the house. Mr. Fields also testified that monthly and quarterly reports were completed by Mr. Skinner and sent to ULC, but no such records were made available in this proceeding. From this conflicting testimony we cannot draw any conclusions as to what happened to the money, if any, which was not used to reimburse Mr. Fields.
5. ULC of Modesto no longer qualifies as an organization described in sec. 170(c)(2). Announcement 84-90 (Sept. 4, 1984)1984-36 I.R.B. 32↩. 6. Throughout the proceeding petitioners have argued that the "only" issue involved is whether or not contributions were made. They consistently allege that all contributions were made to ULC in Modesto.
7. This Court has repeatedly rejected claimed deductions for contributions to organizations chartered by the Universal Life Church. See Wedvik v. Commissioner, 87 T.C.    ,     n.5 (Dec. 30, 1986↩). The instant case presents no exception to this line of cases.
8. See Roben v. Commissioner,T.C. Memo. 1986-48; VanCleve v. Commissioner,T.C. Memo. 1985-546↩.
9. See Roben v. Commissioner,supra;VanCleve v. Commissioner,supra.↩